In the Matter of the Arbitration between SOCIEDAD ARMADORA ARISTOME-NIS PANAMA, S.A., as Owner of THE HONDURAN STEAMSHIP ARISTOTE-LIS and TRI-COAST STEAMSHIP COMPANY pursuant to an Arbitration Agreement dated New York February 16, 1957.

United States District Court
S. D. New York.
March 1, 1960.
On Reargument May 13, 1960.

Hill, Betts & Nash, New York City, for Sociedad Armadora Aristomenis Panama, S. A., Edwin Longcope, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for Tri-Coast S.S. Co., Clement C. Rinehart, New York City, of counsel.

**740**

HERLANDS, District Judge.

■ An arbitration award resolving differences between parties to a charter party purported to adjudicate two claims: First, "Owner's claim for damages due to alleged grounding" (which the arbitrators denied); and, Second, "Owner's claim for additional charter hire" (which the arbitrators allowed in part). The charterer brought this motion under the Federal Arbitration Act, 9 U.S.C. § 11, asking the court to modify and correct the award by striking therefrom the above-indicated second item on the ground that it involves a matter not submitted to the arbitrators. There is no question of jurisdictional amount because the matter is cognizable in admiralty. 28 U.S.C. § 1333.

On February 1, 1952, the parties entered into a charter party which provided, *inter alia:*

"4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of * * *; hire to continue until the hour of the day of her redelivery in like good order and condition, ordinary wear and tear excepted, to the Owners * * *"

"6. That the cargo or cargoes be laden and/or discharged in any dock or at any wharf or place * * *, provided that the Vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessels to safely lie aground."

"17. That should any dispute arise between the Owners and the Charterers, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing an award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men."

Allegedly, the vessel went aground twice during the charter period. At the end of its voyage, and on April 11, 1952, it was placed in dry dock. Off-hire survey disclosed certain damage which the owner attributed to the grounding and stevedore damage. The vessel remained in dry dock, undergoing cleaning and repairs, until the morning of April 18th. The charterer paid charter hire until midnight April 14th, the time at which it considered that work for which it was responsible had been completed and the vessel redelivered.

In correspondence between the parties in April and May of 1952, the owner asserted claims (1) for damage to the vessel, and (2) for charter hire for the remainder of the period during which the vessel was being repaired. So much, the charterer admits. It argues that there is nothing to show that the owner pressed the claim for charter hire subsequent to May 1952.

■ After a close examination of the entire record, the court is clearly of the view that the claim for additional charter hire was a matter actually submitted to the arbitrators, within the meaning of 9 U.S.C.A. § 11(b).

The obligation to arbitrate "any dispute" was created by the charter party. That an unresolved dispute existed with regard to additional charter hire, unrelated to the grounding damage claim, is apparent from the correspondence between the parties and the owner's "Statement of Claim." The charterer does not deny that it existed. The owner submitted the matter to the arbitrators in its "Statement of Claim," and presented evidence at the hearing with regard to it. Its placement before the arbitrators was not surreptitious.

■ The claim was not presented explicitly in the so-called "Arbitration Agreement." But that document did not create the obligation to arbitrate, i. e., it was not jurisdictional, and it was not the sole vehicle by which the parties' disputes were presented for arbitration. The arbitration must have proceeded even if the parties had failed to agree upon any such joint document, but had filed

each its own claims and arguments *ex parte*. It is unlikely that the parties meant to ask only for a partial settlement, which would have forced them either to come to an agreement or to a second arbitration. It is plain from the owner's "Statement of Claim" that it at least supposed that the arbitration was to settle everything. American Almond Products Co. v. Consolidated Pecan Sales Co., 2d Cir., 1944, 144 F.2d 448, 450, 154 A.L.R. 1205; Arlington Towers Land Corp. v. John McShain, Inc., D.C.D.C. 1957, 150 F.Supp. 904, 925.

The American Almond case, supra, was similar to the case at bar, and the rationale and policy which Judge Learned Hand there exposited control the decision of this case. See also Application of States Marine Corp., D.C.S.D.N.Y.1954, 127 F.Supp. 943. Cf. James Richardson & Sons v. W. E. Hedger Transp. Corp., 2d Cir., 1938, 98 F.2d 55, certiorari denied 305 U.S. 657, 59 S.Ct. 357, 83 L.Ed. 426; Arlington Towers Land Corp. v. John McShain, Inc., supra, 150 F.Supp. at pages 923–926. Contra, Wright Lumber Co. v. Herron, 10 Cir., 1952, 199 F.2d 446.

■ It is the policy of the Federal Arbitration Act, and of the Federal courts in applying it, to encourage arbitration and to uphold arbitration awards, whenever they justly may, Robert Lawrence Co. v. Devonshire Fabrics, Inc., 2d Cir., 1959, 271 F.2d 402, 410; Karppinen v. Karl Kiefer Mach. Co., 2 Cir., 1951, 187 F.2d 32, 34. See H.R.Rep.No. 96, 68th Cong., 1st Sess. (1924); S.Rep. No.536, 68th Cong., 1st Sess. (1924).

■ For an alternative ground on which the court denies this motion, the court refers to the language of section 11. It is not mandatory, as are the New York (Civil Practice Act, § 1462–a) and New Jersey (N.J.S.A. section 2A:24–9) statutes from which it is taken. Rather, it invokes the discretion of the district court to modify and correct the award so as to effect its intent and promote justice between the parties. The instant award is clear and internally consistent. It obviously needs no modification or correction to effect its intent. The parties having agreed in the charter party to arbitrate their disputes, the charterer having had notice of the dispute at issue and of the owner's intention to submit it to the arbitrators, evidence having been presented and witnesses examined and cross-examined, and the arbitrators presumably having deliberated well and in good faith, there is no injustice to the charterer in upholding their award. On the other hand, to force the owner to set litigative machinery in motion once again clearly would be unjust. Even in the courts, supposedly beset by technical limitations of which arbitration is free, a pleading may be amended to conform to the proof.

■ In deciding this motion, the court has considered whether it might reach a different decision if the motion were brought under 9 U.S.C. § 10(d) on the ground that the arbitrators "exceeded their powers," and has determined that it would not. American Almond Products Co. v. Consolidated Pecan Sales Co., supra. The sections overlap in scope of submission cases, and the considerations are largely the same.

In view of the foregoing, the motion is denied. This opinion shall constitute an order.

### On Reargument.

Upon the granting of the charterer's motion for reargument, there has been a rehearing and full reexamination of the factual and legal issues.

Two claims were arbitrated and covered by the award dated August 4, 1959 (Exhibit "Two" attached to the motion papers):

1. The owner's claim for damages due to alleged groundings (denied by the arbitrators); and

2. The owner's claim for additional hire unrelated to grounding damage, i. e., charter hire for twenty-one hours subsequent to April 14, 1952, when charterer's repairs and cleaning were still being made (allowed in part by the arbitrators).

The amount involved here is $1,806.46, covering the owner's claim for additional charter hire when "charterer's repairs and cleaning were performed during a 21-hour period from April 14th to April 15, 1952.

The original motion was brought by the time charterer (Tri-Coast Steamship Company) under 9 U.S.C.A. § 11, to have the Court modify and correct the arbitration award (dated August 4, 1959) by striking therefrom the above-indicated second item on the asserted ground that the claim for additional hire unrelated to the alleged groundings involves a matter not submitted to the arbitrators.

In deciding a motion brought under 9 U.S.C.A. § 11(b), the Court must decide whether the matter upon which the arbitrators awarded was submitted to them, i. e., placed before them for adjudication under circumstances which afforded the parties adequate notice.

On an examination and reexamination of the whole record before it, the Court has found that the claim for additional charter hire unrelated to the alleged groundings was so submitted.

On February 1, 1952, the parties entered into a charter party that required the charterer to pay for use and hire until the hour of the day of redelivery in like good order and condition, and that also provided for arbitration. Allegedly, the vessel went aground during the charter period, on March 11, 1952, and March 12, 1952.

At the end of the voyage and on April 11, 1952, the vessel was placed in drydock. It remained in drydock, undergoing cleaning and repairs, until the morning of April 18, 1952. The charterer paid charter hire until midnight of April 14, 1952, the time at which it considered that work for which it was responsible had been completed and the vessel redelivered.

The charterer argues that there is nothing to show that subsequent to 1952 the owner pressed the claim for additional charter hire. Was the claim for additional hire unrelated to grounding damage a matter actually submitted to the arbitrators, within the meaning of 9 U.S.C.A. § 11(b)? The Court originally held it was so submitted. The Court reaffirms that holding and will amplify the reasons expressed in the decision filed March 1, 1960.

There was ample evidence that there was an unresolved dispute about additional charter hire unrelated to the grounding damage claim.

A. That fact appears in the correspondence between the parties. See, for example, reference is to "stevedoring damages" (Owner's Exhibit 1), "workmen to sweep Main Deck" (Owner's Exhibit 4), "repairs for the charterer's account" (Owner's Exhibit 5), "charterer's obligations" (Owner's Exhibit 6), charterer's Survey Report of April 22, 1952, especially 10, 11, 12 (Owner's Exhibit 7), letter of May 21, 1952, from the owner to the charterer, second paragraph (Owner's Exhibit 8), letter of May 29, 1952, from the charterer to the owner (Owner's Exhibit 9). These and the other exhibits to be referred to reveal mutual knowledge of separate claims and aid in the resolution of any ambiguity in the arbitration agreement.

B. That fact appears in the owner's statement of claim. Item "3," third paragraph thereof, differentiates between "Repairing of certain damages and cleaning of the vessel, which was done for charterer's account, * * *" and "Repairs necessitated by the groundings * * *." (Exhibit 10). Item "4(2)" then consolidated the claims for additional hire without separately stating the bases or theories of the claims.

The owner's "statement of claim" was submitted to the arbitrators and to the charterer on or about January 14, 1957. It is to be noted that the arbitrators' award (Exhibit "Two" attached to the original motion papers) followed the form of the itemization set forth in the owner's statement of claim, paragraph 4(1) and (2).

C. The owner presented evidence with regard to that claim at the hearing before the arbitrators. (See opposing

affidavit of Edwin Longcope, sworn to December 3, 1959, pp. 7–12).

D. The above statements are operative notwithstanding the circumstance that the claim was presented ambiguously in the so-called "Arbitration Agreement" because—as a matter of the parties' intention—they undoubtedly planned to have the arbitrators settle the pending disputes. The philosophy of American Almond Products Co. v. Consolidated Pecan Sales Co., Inc., 2 Cir., 1944, 144 F.2d 448, 154 A.L.R. 1205 illuminates the problem at bar and furnishes the necessary judicial insight. The language of the "Arbitration Agreement" indicates that something more than claimed damages resulting from alleged groundings was to be arbitrated, i. e., item "(a)" listed in the said agreement.

One of the items of damage claimed therein was:

"Detention

"Balance of hire from midnight April 14, 1952 to 10:20 a. m. April 18, 1952...$7,053.76."

The agreement then recited:

"Whereas, the Charterers deny said claims of the Owners and the following disputes exist between them: (a) whether under the terms of the Charter, the charterers are liable to any extent in respect of Owner's said claims; and (b) whether, in any event, the items of repair and other damages claimed by the Owners were the result of the groundings claimed; * * *"

Had the arbitrators merely determined "whether * * * the items of repair and other damages claimed by the Owners were the result of the groundings claimed," they would have adjudicated only dispute "(b)." They would have left dispute "(a)" unresolved. By "(a)" the arbitrators were asked to adjudicate whether, under the contractual terms of the charter, the charterer is liable "to any extent" for any of the items of damages listed, even though they are not found to have resulted from the alleged groundings.

■ The Arbitration Agreement is ambiguous. In order to resolve the ambiguity resort may be had to the antecedent correspondence and documents between the parties. A review of that data definitively demonstrates that there was a dispute about the claim for additional hire unrelated to grounding damage and that that dispute was differentiated from grounding damage in the owner's statement of claim.

In that light, the third "Whereas" recited in the Arbitration Agreement reflects in part the differentiation between damages that were "the result of the groundings claimed" and charterer's liability "to any extent" under the charter. The difficulty was created by including in the "Detention" claim the consolidated claims for additional hire as set forth in item "4(2)" of the owner's statement of claim but without the differentiation set forth in item "3" of the owner's statement of claim.

■ The movant-charterer, attacking the award, has the burden of showing that the arbitrators exceeded their powers. American Almond, supra, 144 F.2d at page 450.

Although the Award follows the form of the owner's "Statement of Claim" it is responsive also to the questions asked the arbitrators in the "Arbitration Agreement." Without changing its substance, the arbitrators might have worded the award thus:

"(a). Under the terms of the Charter, the charterer is liable to the owner in respect of the owner's detention claim to the extent of twenty-one (21) hours at the rate of hire set forth in the said Charter.

"(b). The items of repair and other damages claimed by the owner were not the result of the groundings claimed."

■ On this motion, the Court need decide only whether the claim for additional charter hire was in fact fairly submitted to the arbitrators.

The owner's detention claim was an unresolved dispute between the parties,

and they were bound by the charter to arbitrate it. There is nothing to indicate that it ever was abandoned. It was to be expected that the owner would submit that claim to arbitration, together with its claim for the damages which it attributed to the alleged groundings because they arose out of the same transaction. The owner clearly did so by its "Statement of Claim" and it thought it did so by the "Arbitration Agreement."

 It may be said that, in its attempt to prevent adjudication of the detention claim, the charterer did not exercise its privilege to present evidence and argument thereon. That is not relevant to the question presented on this motion: whether the detention claim was a matter actually submitted to the arbitrators.

 Finally, the Court reiterates that the policy in the federal courts is to uphold arbitration awards whenever that can justly be done. Under 9 U.S.C.A. § 11, the Court possesses discretionary power to promote justice between the parties. In the case at bar, the language and the intent of the award is clear and internally consistent.

In Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corporation, 2 Cir., 1960, 274 F.2d 805, 808, Judge Clark, speaking for a unanimous court, declared:

"* * * the court's function in confirming or vacating an arbitration award is severely limited. If it were otherwise, the ostensible purpose for resort to arbitration, i. e., avoidance of litigation, would be frustrated. See Note, Judicial Review of Arbitration Awards on the Merits, 63 Harv.L.Rev. 681 (1950). The statutory provisions, 9 U.S.C. §§ 10, 11, in expressly stating certain grounds for either vacating an award or modifying or correcting it, do not authorize its setting aside on the grounds of erroneous finding of fact or of misinterpretation of law. It is true that an award may be vacated where the arbitrators have 'exceeded their powers.' 9 U.S.C. §

10(d). Apparently relying upon this phrase, the Supreme Court in Wilko v. Swan, 346 U.S. 427, 436–437, 74 S.Ct. 182, 98 L.Ed. 168, suggested that an award may be vacated if in 'manifest disregard' of the law. But cf. Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 203 note 4, 76 S.Ct. 273, 276, 100 L.Ed. 199: 'Whether the arbitrators misconstrued a contract is not open to judicial review,' citing The Hartbridge, 2 Cir., 62 F.2d 72, certiorari denied Munson Steamship Line v. North of England Steamship Co., 288 U.S. 601, 53 S.Ct. 320, 77 L.Ed. 977. See also Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 2 Cir., 62 F.2d 1004; James Richardson & Sons v. W. E. Hedger Transp. Corp., 2 Cir., 98 F.2d 55, certiorari denied W. E. Hedger Transp. Corp. v. James Richardson & Sons, 305 U.S. 657, 59 S.Ct. 357, 83 L.Ed. 426.'"

In this case, the arbitrators did not exceed their powers; the award is not in manifest disregard of the law; and there is no evidence that they made an erroneous finding of fact or misinterpreted the law or misconstrued the charter.

The words with which Judge Learned Hand concluded his opinion in American Almond, supra, 144 F.2d at page 451 are apposite:

"Arbitration may or may not be a desirable substitute for trials in courts; as to that the parties must decide in each instance. But when they have adopted it, they must be content with its informalities; they may not hedge it about with those procedural limitations which it is precisely its purpose to avoid. They must content themselves with looser approximations to the enforcement of their rights than those that the law accords them, when they resort to its machinery."

The Court adheres to its original decision and opinion filed March 1, 1960.

So ordered.