In the Matter of the Arbitration between **EL NAVIGATORS, INC.,** as Owners of the S.S. "**PANTAZIS L,**" Petitioner,

and

**CARGILL, INCORPORATED,** Charterers, Respondent.

United States District Court
S. D. New York.
June 5, 1963.

———◆———

Healy, Baillie & Burke, New York City, for petitioner, Walter G. McNeill, New York City, of counsel.

Lord, Day & Lord, New York City, for respondent, Vincent M. McConnell, New York City, of counsel.

FEINBERG, District Judge.

This is a motion by petitioner El Navigators, Inc., as owners of the S.S. "Pantazis L" (hereinafter referred to as "Owner"), to set aside an arbitration award rendered in favor of respondent Cargill, Incorporated (hereinafter referred to as "Charterer"). The controversy arises from a charter party under which Owner transported a cargo of bulk copra for Charterer from the Philippine Islands

to Europe. With regard to freight, the charter party provided as follows:

"Space       Vessel guaranteeing 350000–375000 (3500 Tons Max) cubic feet bale under deck for stowage of cargo. * *

"Rate of Freight   [D]eliver the cargo on being paid freight as follows $0.14 (FOURTEEN CENTS U.S.A. CURRENCY) PER BALE CUBIC FOOT TENDERED AS CONFIRMED BY LLOYDS SURVEYOR AT FIRST LOADING PORT."

On March 2, 1962, an addendum to the charter party was entered into which stated in part:

"Charter Party quantity to be increased from 350,000–375,000 bale cubic (maximum 3500 long tons) up to 410,000–425,000 bale cubic (up to but not exceeding 4000 long tons)."

When the ship arrived at the first loading port, Owner claims that the Master tendered or made available to Charterer 425,000 feet and a 4,000 ton capacity.[1] Respondent apparently claims that only 257,926 cubic feet were made available, as evidenced by a survey conducted at the time.[2] Charterer loaded 275,323 bale cubic feet of copra, weighing approximately 4,012 tons,[3] and it has paid only for this amount, at 14¢ per foot. Owner contends that Charterer should pay an additional $23,728.64 on the basis of 425,000 feet at 14¢ a foot, since that amount of space was tendered. This dispute was taken to arbitration,[4] and an award in favor of Charterer was rendered on or about November 16, 1962.[5] Petitioner now moves under the Federal Arbitration Act, 9 U.S.C. §§ 10(d) and 11(b), to vacate this award.

Owner urges two contentions in support of its motion: (1) the arbitrators exceeded the authority granted them by the arbitration clause in that they changed the express terms of the charter by interpreting clear and unambiguous terms, and (2) the arbitrators awarded upon a matter not submitted to them.

1. The contention of petitioner Owner that the award exceeds the jurisdiction of the arbitrators in that a clear and unambiguous term—"tendered"—was changed to a different and unintended one—"used"—is unfounded. In the circumstances of this case, the term "tendered" was ambiguous. The normal practice in chartering copra vessels is to contract for full cargoes (*i.e.*, the whole ship) on a firm bale cubic foot basis, and to contract for part cargoes, as here, on a firm tonnage or weight basis. Thus, with a full cargo charter, the phrase "vessel guaranteeing 425,000 feet" means that the Owner will make available that many feet and that the Charterer can fully utilize that amount and must pay on the basis of that amount.[6] Here, however, the phrase "vessel guaranteeing" has a weight limitation—"(up to but not exceeding 4000 long tons)". The weight of bulk copra is such that 4,000 long tons of it would occupy considerably less than 425,000 bale cubic feet. If the

---

1. Affidavit of Walter G. McNeill in Support of Motion to Vacate Arbitration Award, Para. 7.

2. Affidavit of Vincent M. McConnell in Opposition to Motion to Vacate Arbitration Award, pp. 5–6.

3. Id. at 6.

4. There was no submission agreement. However, at the beginning of the hearing before the arbitrator, the scope of the arbitration was stipulated as follows:

"ATTORNEY FOR OWNERS: May we have it noted on the record that the only dispute that we are having submitted to the panel is the dispute concerning the computation of freight under this charter party.
"COUNSEL FOR CHARTERERS: Yes."
McNeill Affidavit, p. 4.

5. McNeill Affidavit, p. 1, and Exhibit 1 attached thereto.

6. McConnell Affidavit, pp. 10–11.

contract was construed as one for a firm 425,000 bale cubic feet, as Owner claims it should be, Charterer would be required to pay on the basis of 425,000 feet even though it could not use much of this space because of the express weight limitation. It seems unlikely that such a meaning was intended. Charterer contends that "tendered" must be read in light of the weight limitation, and as a normal part cargo contract, so that bale cubic feet "tendered" means the number of bale cubic feet which would be occupied by the tonnage tendered or made available, viz, 4,000 long tons.

I do not and should not decide which of these meanings was intended. However, the fact that the "obvious" construction urged by petitioner of a "clear and unambiguous" term leads to such an unlikely result establishes that the term is not clear and unambiguous but is susceptible of conflicting interpretations. The use of both a cubic foot guarantee and a tonnage limitation created an ambiguity, which the arbitrators had to and did resolve. Their decision that the intent of the word "tendered" was synonymous with the word "used" is nothing more than a decision that the word "tendered" had to be read in light of the weight limitation. To the extent that the Owner allowed copra to be loaded in excess of the tonnage limitation, the Charterer would certainly have to pay for the additional cubic feet utilized.

■■ Interpretation of an ambiguous word is clearly a function for the arbitrators under the arbitration clause in the charter party, which states:

"Arbitration

Clause

If any dispute or difference should arise under this Charter, same to be referred to [arbitration] * * *."

In In the Matter of Kinoshita & Co., 287 F.2d 951 at p. 953 (2 Cir., 1961), the Court of Appeals for this Circuit recently stated:

"[W]here the [arbitration] clause restricts arbitration to disputes and controversies relating to the interpretation of the contract and matters of performance, fraud in the inducement is not included. The agreement to arbitrate is limited to such matters as those just enumerated when it refers to disputes or controversies 'under' or 'arising out of' the contract."

Since the arbitration clause makes arbitrable "disputes" arising "under" the charter, the arbitrators had the power to interpret the contract, and they did not exceed their jurisdiction.[7]

■ 2. Petitioner Owner contends that "the sole issue presented to the arbitrators was: 'how many bale cubic feet were tendered at the first loading port?',"[8] and that the issue actually decided was different from this issue presented. Respondent Charterer does not deny that the question presented was the number of cubic feet tendered, but it contends that the decision of the arbitrators did decide this very question by resolving the meaning of the word "tendered." While there may have been a factual dispute as to how many feet were made available, there was also, as indicated above, a serious dispute as to the meaning of the word "tendered." In fact, the arbitrators could not decide the question of feet tendered until they had construed that term. Thus, the problem of the interpretation of the word "tendered" was included within the issue which petitioner itself claims was presented.[9] Because the construction of the term "tendered" was included within the broad issue submitted, and because both parties offered evidence before the arbi-

7. See United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 598–99, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

8. Brief for Petitioner, p. 8.

9. Cf. American Almond Prods. Co. v. Consolidated Pecan Sales Co., 144 F.2d 448, 450 (2 Cir., 1944).

trators as to the interpretation of the contract with regard to freight rates, I conclude that the issue actually decided was the matter submitted to the arbitrators, "i.e., placed before them for adjudication under circumstances which afforded the parties adequate notice."[10] Therefore, this is not a proper occasion for the exercise of discretion under 9 U.S.C. § 11(b) to modify or correct the award.

Petitioner Owner's motion under 9 U.S.C. §§ 10(d) and 11(b) is denied. This constitutes an order, and no further order is necessary.

---

10. Sociedad Armadora Aristomenis Panama, S.A. v. Tri-Coast S.S. Co., 184 F.Supp. 738, 742 (S.D.N.Y.1960).