## AMERICAN ALMOND PRODUCTS CO. v. CONSOLIDATED PECAN SALES CO., Inc.

### No. 348.

Circuit Court of Appeals, Second Circuit.

July 21, 1944.

Lewis F. Glaser, of New York City, for appellant.

Louis Scherer and Sidney Feldshuh, both of New York City, for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The defendant, Consolidated Pecan Sales Co., Inc., appeals from a judgment for damages upon a breach of contract, entered upon an award of arbitrators under § 9 of Title 9, U.S.C.A. The result depends upon the answer to two questions: (1) Whether the arbitrators exceeded their powers as defined by the submission; and (2) whether they should have awarded damages, although no evidence on that issue was presented to them. The controversy arose over a contract for the sale of 30,000 pounds of pecan nuts by the defendant to the plaintiff, executed on August 28, 1942, which provided for shipment "in partial lots at Seller's option starting latter part of November/early December, and running through to June." Printed terms were attached, of which those relevant to this controversy are as follows. Article 9: "The Seller shall have the right to deliver the entire order at one time or in portions from time to time within the time of delivery herein provided." Article 10: "Seller * * * reserves the right to make pro-rata delivery in case of short crops or for any cause or condition beyond the Seller's control." Article 11: "neither the Seller nor his Agents shall be liable for any damages or loss to the Buyer from short, delayed or non-shipment or non-delivery caused by * * * partial failure of crops * * * or other causes, unavoidable or beyond the control of the Seller or his Agents. The Seller or his Agent reserves the right to cancel any such sales for any of said causes." The contract concluded with an arbitration clause.

The defendant delivered 990 pounds of nuts; and on the 16th of January, 1943, advised the buyer that there was a short crop, and that it would be able to make only a pro rata delivery. It offered delivery of twenty per cent of the stipulated amount which it later raised to twenty-five per cent,

and which the plaintiff refused, insisting upon full delivery, or at least that the proper pro rata amount was greater. Negotiations proving futile, on March 1, 1943, the defendant demanded "arbitration of the following controversy." It recited Article 11 of the contract, and then proceeded, "Cancellation of the unshipped part of a contract dated August 28, 1942, covering 30,000 Stuarts and/or Schley Pecan Pieces, at a price of 40¢ per pound delivered New York, based on conditions in above clause, which is paragraph 11 of the signed contract." On March 23rd, the defendant filed what it described as an amendment to "amplify and clarify" the issues submitted. "We wish a construction of paragraphs 11 and 10 of the conditions on the reverse side of the contract:

"1—Does paragraph 11 give the seller, for causes enumerated therein, a right to cancel the contract in its entirety?

"2—If seller had a right to cancel the contract and exercised this right, does it not relieve the seller of any further obligation or liability under said contract?

"3—Does paragraph 10 give to the seller a right to make prorata deliveries for causes stated in said paragraph?

"4—If seller had a right to prorate deliveries and exercised its right, and buyer declined to accept, does that not relieve the seller of any obligation or liability under said contract."

On April 21st, the parties stipulated to waive an oral hearing, and that the arbitration should be conducted in accordance with the rules of the American Arbitration Association. That association appointed there arbitrators, who took the oath on May 14, 1943, and on June 29th of that year, rendered the following award:

"1. That the seller did not have the right to cancel the contract in its entirety pursuant to paragraph 11 thereof.

"2. The seller was not relieved from its obligation and liability under said contract, dated August 28, 1942.

"3. The seller had the right to make prorata deliveries pursuant to paragraph 10, for causes stated therein.

"4. The seller neither tendered nor made a proper or adequate delivery to the buyer pursuant to said provisions of the contract.

"5. The claim of the American Almond Products Co. for damages alleged to have been sustained is fixed in the sum of $6,022.80, without interest."

Upon this award the plaintiff moved for confirmation of the award and for judgment upon it, and the defendant countered by a motion to vacate it. The defendant argued that, although the plaintiff in the "statement" of its case to the arbitrators had raised the question of damages, the "statement" had left blank the market values of pecans at the critical dates, and the plaintiff had never submitted any evidence to support its claim except a statement in its attorney's brief that the market price of the nuts "at the time of refusal was 88¢ per pound, thus indicating a difference of $12,960.00, the prorated quantity by the difference in sales from market price." The judge held that the arbitrators meant to decide that there was no tender, or adequate or proper delivery, to relieve the defendant of liability, and that their fourth answer was "appropriate" under the circumstances. He further held that the claim for $12,960 damages, made in the attorney's brief, was an adequate basis for the award of damages. He granted the motion to enter judgment upon the award, and denied the motion to vacate it.

Of the grounds for vacating an award in arbitration stated in § 10 of Title 9, U.S.C.A. the defendant can avail itself of only subdivisions (c) and (d), which we shall take up in reverse order. The arbitrators "exceeded their powers," within the meaning of subdivision (d) only in case the submission did not require, or admit of, their fourth and fifth answers. In deciding whether it did, we should not however have regard alone to the four questions propounded to them on March 23, 1943; we must include also the original submission of March 1, of which the four questions were merely an implementation. It will be observed that upon the original submission the defendant "demanded" arbitration of a "controversy," which involved generally the "Cancellation of the non-shipped part of a contract" etc. These words assumed that there had been a "cancellation," and a cancellation is different from a failure to deliver; it is ordinarily, if not inevitably, a refusal to proceed. Strictly, the arbitrators should therefore have found how large was the crop shortage, and how much the defendant refused to deliver of what it remained bound to deliver. That would have been the "cancellation" contemplated by the sub-

mission. The fourth of the questions of March 23, might, or might not, prove ancillary to that issue, for it was only hypothetical. It merely asked the arbitrators to say whether, if the defendant reduced its deliveries no more than the contract justified, and if the plaintiff refused to accept the short shipment when it was tendered, the defendant was liable for failure to deliver the rest. When the arbitrators found, as they did, that the defendant had not tendered its proper pro rata delivery, no answer to that question was necessary, or indeed proper. However, the fact that they were not called upon to answer the fourth question of March 23, does not necessarily mean that their own fourth answer was within the submission. For the reasons we have just given, formally it was not; it found only that the defendant did not deliver what it should have delivered. The defendant makes much of this departure especially because at the time the award was made—June 29—the time for delivery had not ended. Incidentally, in that it is wrong, for the time for delivery was not "through June," but "through to June"; but we do not rest upon that; we shall dispose of the case on the theory that the defendant had all of June to deliver. This we may do because the difference between a finding that the defendant did not deliver and one that it refused to deliver before its time for delivery had expired, is not the kind of defect that should vacate the award. Perhaps it might, if the defendant had shown that before the time for delivery had expired, the parties had never come to a deadlock upon the issue as to how much of the deliveries the crop shortage excused. But if they had come to such a deadlock, and if the defendant had taken the position that it would only deliver what it proposed to deliver, the fact that the fourth answer did not conform with the original submission of the issue of "cancellation," was irrelevant. The defendant had the burden of showing that the arbitrators exceeded their powers, and it did not carry that burden; it should have shown that there was no "cancellation." The fourth answer was an irregular, but a good enough, answer to the issue of "cancellation," if in fact there had been a "cancellation."

There remains the question of damages; which depends upon whether it was "misbehavior" under. subdivision (c) to make an award in money without any evidence of market price. Concededly the plaintiff tendered this issue in its "statement"; it was not surreptitiously interpolated. Although it does not appear that the arbitrators were in the nut trade and obliged to keep familiar with the market in pecans, on the other hand it nowhere appears that they were not; and the defendant has the burden of proof also on the issue of "misbehavior." If they were of that trade, they were justified in resorting to their personal acquaintance with its prices. In trade disputes one of the chief advantages of arbitration is that arbitrators can be chosen who are familiar with the practices and customs of the calling, and with just such matters as what are current prices, what is merchantable quality, what are the terms of sale, and the like. Although we have been able to find very little on the point, such decisions as there are, appear to assume that they may resort to their acquaintance with such facts. Liggett v. Torrington Bldg. Co., 114 Conn. 425, 158 A. 917; Koepke v. E. Liethen Grain Co., 205 Wis. 75, 236 N.W. 544. When, and how far, they may do so, depends no doubt upon the character of the controversy, and the way in which the parties present it to them. In the case at bar it seems to us to the last degree unlikely that the parties meant to ask only for a partial settlement, which would have forced them either to come to an agreement, or to a second arbitration. Indeed, it was plain from the plaintiff's "statement" demanding damages for a breach, that it at least supposed that the arbitration was to settle everything; and the defendant, being so advised, was bound in good faith, either to protest that the plaintiff had misapprehended the scope of the submission, or to ask leave to put in evidence of market value. The one course not open was to allow the arbitration to proceed to an award upon an assumption, which (1.) was naturally to be drawn from the submission itself, which (2.) the plaintiff had plainly adopted, and which, (3.) so far as appears, demanded nothing of the arbitrators which they were not competent to provide. The case of Stefano Berizzi Co., Inc., v. Krausz, 239 N.Y. 315, 146 N.E. 436, on which the defendant relies, is not to the contrary. The parties had submitted evidence as to whether the skewers conformed with the contract, but the arbitrator had supplemented it by an independent examination, mostly by inquiry from others, partly through his salesman. That was held to be "misbehavior," and it is hard to see how the court

could have held otherwise, for, when the parties put in their own evidence, they must have expected the arbitrator to act upon it and upon nothing else. Had the parties at bar submitted evidence upon the issue of damages, and the arbitrators looked elsewhere, it might have been "misbehavior"; but it was not "misbehavior" to settle a controversy meant to be finally disposed of, by the only means open to the arbitrators, as the case stood. Arbitration may or may not be a desirable substitute for trials in courts; as to that the parties must decide in each instance. But when they have adopted it, they must be content with its informalities; they may not hedge it about with those procedural limitations which it is precisely its purpose to avoid. They must content themselves with looser approximations to the enforcement of their rights than those that the law accords them, when they resort to its machinery.

Judgment affirmed.