**COMPANIA PANEMENA MARITIMA SAN GERASSIMO, S.A., as owners or chartered owners of the STEAMSHIP UNION MARINER under voyage charter of August 23, 1955, Appellant,**

v.

**J. E. HURLEY LUMBER COMPANY, as voyage charterers of Steamship Union Mariner, Appellee.**

**Docket 24587.**

United States Court of Appeals
Second Circuit.

Argued April 1, 1957.

Decided April 30, 1957.

Hill, Rivkins, Middleton, Louis & Warburton, New York City (John G. Poles and Yorkston W. Grist, New York City, of counsel), for appellant.

Burlingham, Hupper & Kennedy, New York City (Herbert M. Lord, New York City, of counsel), for appellee.

Before CLARK, Chief Judge, LUMBARD, Circuit Judge, and LEIBELL, District Judge.

LEIBELL, District Judge.

On August 23, 1955, the J. E. Hurley Lumber Company entered into a voyage charter contract with Compania Pane-

mena Maritima San Gerassimo, S.A., pursuant to which the S.S. "Union Mariner" was assigned to carry lumber from Coos Bay, Oregon, to Botwood, Newfoundland. The cargo was to be "about 2,500,000 board feet of lumber." The Union Mariner failed to lift the full 2,500,000 board feet and it is claimed that the charterer had to find other means of forwarding 188,000 board feet. The cost of forwarding that lumber, and charterer's claim for a pro rata reduction of the amount paid under the charter, plus some cross claims for dispatch and demurrage monies were claims in controversy between the parties. The charter party contained an arbitration clause as follows:

"That should any difference or dispute arise between the Owners and the Charterers, the same shall be referred to two parties in New York conversant with shipping matters, one to be appointed by each of the parties hereto, and the two so chosen shall, if they cannot agree, appoint a third party as Umpire, whose decision or the decision of any two of them shall be final and binding, and this agreement may for enforcing the same be made a Rule of Court."

Both sides named arbitrators but there was delay on the part of the owner of the vessel in naming an arbitrator and in agreeing on the issues to be arbitrated and on a date when the arbitration would proceed. As a result the attorneys for the charterer made a motion in the District Court complaining of the delay and requesting "that the Court direct the arbitrators to hold a preliminary hearing to resolve the issues in dispute and to determine whether a third arbitrator should be appointed." And "If Mr. Poles is unable to handle the matter for the owner, it is suggested that owner's proctors nominate another attorney to handle the arbitration so that it may proceed without further delay."

The motion was opposed. On May 8th, 1956, Judge Dimock endorsed the motion papers as follows:

"Motion granted to the extent that this matter proceed to arbitration eight (8) weeks from this date. So ordered."

On October 2, 1956 the arbitration finally got under way. Only two hearings were held by the arbitrators.

In the course of the above arbitration proceeding a question arose as to the meaning of the word "about," as used with the words "2,500,000 board feet of lumber" in the charter party. Apparently it was the contention of the charterer that a representation had been made by the broker for the vessel's owner, that the S.S. Union Mariner had the carrying capacity of at least the 2,500,000 board feet and not the lesser quantity that was in fact carried (187,492 board feet short); and that the representation was fraudulent. The claims asserted by the charterer in the arbitration proceeding were for money damages. The owner objected to the submission of any evidence in the arbitration proceeding on the question of fraud, asserting that a claim of that kind was not one under the charter-party; that it was in effect a claim of fraudulent inducement of the contract based on the fraud of the owner's broker.

On an application by the owner to the District Court on October 15, 1956, for an order enjoining the arbitrators from further proceedings in the arbitration, or in the alternative from receiving any proof on the question of fraud prior to the making of the contract, Judge Edelstein denied the motion in an opinion filed January 21, 1957. The matter is here on an appeal from his order.

It should not be the function of the District Court, after having ordered an arbitration to proceed, to hold itself open as an appellate tribunal to rule upon any questions of evidence that may arise in the course of the arbitration. If arbitrators go beyond the limits of the issues submitted to arbitration, and attempt to decide issues that are not concerned with the dispute arising under the agreement which contains the arbi-

tration clause, their action may be reviewed by the District Court when the award of the arbitrators is attacked in the manner provided in the Federal Arbitration Act, 9 U.S.C. §§ 10 and 11.[1]

In Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 2 Cir., 62 F.2d 1004, 1005, Judge L. Hand stated:

"It is true that under section 9 of title 9 (U.S.C.A.) the successful party may enforce the award by judgment, on which execution will go under section 13. But the judgment follows automatically unless the award has been vacated under section 10, and that is an independent application. So far as the arbitration proceeding itself is concerned, the last deliberative action of the court is the appointment of the arbitrators, who thereupon take over the controversy and dispose of it. Their disposition is not, properly speaking, reviewed by the court, in spite of possible disturbance under sections 10 and 11. It seems to us therefore that the decree is final and appealable."

The decree involved in that case was one appointing arbitrators in a suit under the statute to compel arbitration.

The above quote would indicate, at least, that there should be no applications made to the District Court to review rulings of the arbitrators on the admissibility of evidence. They result only in a waste of time, the interruption of the arbitration proceeding, and encourage delaying tactics in a proceeding that is supposed to produce a speedy decision. Any vital issues can be raised when the successful party seeks to enter a judgment on the award of the arbitrators. § 10(d) and § 11(b); American Almond Prod. Co. v. Consolidated Pecan S. Co., 2 Cir., 144 F.2d 448, 451, 154 A.L.R. 1205.

An arbitration proceeding differs radically from a litigation in court, as Judge L. Hand emphasized in the concluding paragraph of his opinion in American Almond Prod. Co. v. Consolidated Pecan S. Co., supra:

"§ 10. Same; vacation; grounds; rehearing

"In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

"(a) Where the award was procured by corruption, fraud, or undue means.

"(b) Where there was evidence partiality or corruption in the arbitrators, or either of them.

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

"(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators. July 30, 1947, c. 392, § 1, 61 Stat. 669."

"Arbitration may or may not be a desirable substitute for trials in courts; as to that the parties must decide in each instance. But when they have adopted it, they must be content with its informalities; they may not hedge it about with those procedural limitations which it is precisely its purpose to avoid. They must content themselves with looser approximations to the enforcement of their rights than those that the law accords them, when they resort to its machinery."

In the Application of Katz (Application of Burkin), 1957, 3 A.D.2d 238, 160 N.Y.S.2d 159, the Appellate Division, First Department, in an unanimous opinion, stated:

"Arbitration is subject to its own rules and practices at variance with court procedures. It is supposed to be a complete proceeding, without resort to court facilities, for handling and disposing of a controversy submitted to arbitration. It would be generally incompatible with the nature and scope of an arbitration proceeding to allow a shift to the court forum of that part of a proceeding relating to the prehearing examination of witnesses or collection of evidence". 3 A.D.2d at page 239, 160 N.Y.S.2d at page 161.

■■ The order of the District Court is an appealable order, because in effect it seeks a modification of *Judge Dimock's* order directing that the arbitration proceed on a certain date. Farr & Co. v. Cia Intercontinental de Navegacion de Cuba, S. A., 2 Cir., 243 F.2d 342; Davenport v. Procter & Gamble Mfg. Co., 2 Cir., 241 F.2d 511. Appeals of this type should be disposed of summarily, without having them follow the usual course on the calendar of this court. We should discourage disruptive and delaying appeals. Stathatos v. Arnold Bernstein S. S. Corp., 2 Cir., 202 F.2d 525, 527.

■ Ordinarily a stay of an arbitration proceeding should not be included in an order to show cause. The hearing on the application in the District Court should be held on short notice and the matter should be decided summarily. An appeal from the District Court's order may be disposed of on a motion to dismiss. By following that practice, applications for a stay or an injunction that would break up the arbitration proceedings, will not be permitted to drag their way through the courts.

■ We have considered the merits of the application to the District Court and find that there were none. We agree with Judge Edelstein's decision. The order of the District Court is affirmed.