R. L. RENKEN et al., Plaintiffs,

v.

HARVEY ALUMINUM (INCORPO-RATED), Defendant.

Civ. No. 61–207.

United States District Court,
D. Oregon.

June 11, 1971.

Robert M. Kerr, Lamar Tooze, Jr., Arden E. Shenker, William G. Sheridan, Jr., Portland, Or., for plaintiffs.

Fredric A. Yerke, Norman J. Wiener, King, Miller, Anderson, Nash & Yerke, Portland, Or., Samuel O. Pruitt, Jr., F. Lee Coulter, Jr., Robert Forgnone, Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendant.

## OPINION

SOLOMON, District Judge:

This case is before the Court on motions of plaintiffs to double or treble an arbitration award and on a motion of defendant, Harvey Aluminum, to vacate or modify it.

Plaintiffs filed this action in 1961 to enjoin the defendant from trespassing on plaintiffs' fruit orchards by allowing fluorides to escape from its aluminum reduction plant at The Dalles, Oregon. On December 23, 1963, the Honorable John F. Kilkenny (then a District Judge) ruled that the fluoride emissions were a nuisance and a continuing trespass. He announced that he would issue the injunction sought by plaintiffs unless the defendant installed pollution control devices within one year. Renken v. Harvey Aluminum (Incorporated), 226 F.Supp. 169 (D.Or.1963).

The defendant appealed to the Ninth Circuit Court of Appeals. While the appeal was pending, the defendant asked that the case be remanded to this Court to hear new facts which it alleged would make the execution of Judge Kilkenny's order inequitable. The Court of Appeals allowed the remand.

While the hearing on remand was pending, the parties executed an agreement which was later incorporated into a consent decree approved November 3, 1966. The consent decree provided in pertinent part:

"It appearing that plaintiffs are contending that fluorides from defendant's plant have been causing damage in their orchards in the years 1964, 1965, and 1966, and will continue to cause damage in the future; and

"It appearing that defendant is contending that no such damage has been or will be caused; and

"It appearing that the parties desire to provide for an amicable and practical resolution of their differences; now therefore,

"IT IS ORDERED AND DECREED as follows:

. . . . . .

"2. Defendant shall pay each of the plaintiff peach orchard owners the then prevailing market price of his peach fruit which has been or is made unmarketable by soft suture caused by fluorides emmitted [sic] from defendant's plant . . . . The matters covered by this paragraph 2 shall be subject to arbitration pursuant to paragraph 10, hereof.

"3. Defendant shall pay to the respective plaintiffs such amounts as may be necessary to compensate them for past or future economic damage . . . in their respective orchards, caused by fluorides emitted from defendant's plant; subject, however, to the terms and conditions herein stated including arbitration pursuant to paragraph 10.

. . . . . .

"10. Any claims or other matters hereinbefore provided for which are not agreed to or adjusted by the parties shall be arbitrated by a panel of three arbitrators . . . . The expenses of said arbitrators shall be borne by the party which does not prevail in any arbitration; and the arbitrators shall award to the prevailing party the reasonable expenses caused to it by the arbitration proceedings including attorneys' and experts' fees in the event the arbitrators find that the other party instituted or defended the claim involved in bad faith or without reasonable justification. All matters respecting arbitration shall be governed by Sections 33.-210 to 33.340, entitled 'Arbitration and Award' of the Oregon Revised Statutes.

. . . . . .

"14. In the event any provision of the settlement stipulation of the parties . . . shall be violated by either side, the other side shall have the appropriate remedies as provided for by the above-cited sections of the Oregon Revised Statutes, and the District Court shall retain continuing jurisdiction to enforce this Consent Decree, and the settlement stipulation."

In April and May of 1970, plaintiffs filed damage claims in arbitration. None of the claims asked for multiple damages. In amended claims filed January 11, 1971, plaintiffs for the first time sought multiple damages.

On February 12, 1971, the arbitrators filed their findings, decision and award, which provided in part:

"We, the arbitrators, . . . do hereby generally find and decide:

. . . . . .

"II. That plaintiffs should be awarded damages to the extent hereinafter set forth so as to compensate them fully for their economic losses occasioned thereby.

. . . . . .

"V. That the issue of multiplied or punitive damage as provided by Oregon Statutes or the common law is beyond our jurisdiction as limited by the submission of this matter to arbitration.

"VI. That in arriving at a specific award of damages for those plaintiffs entitled thereto, allowance should be and is made to increment such losses for time and inflation, so as to make plaintiffs economically whole. In addition thereto, we find plaintiffs were in need of legal services, for effective representation in these proceedings, and that factor is also considered in the individual awards hereafter set forth."

The arbitrators awarded the plaintiffs a total of $942,305.00.

Plaintiffs base their motions to double or treble the award on the multiple damage provisions of ORS 105.810 and 105.-815.[1] Plaintiffs claim that they re-

tained the right to claim multiple damages in the settlement agreement, and that these statutes automatically operate to multiply the award.

The consent decree provides that the peach orchard owners are entitled to recover "the then prevailing market price" of their unmarketable peaches, and that all plaintiffs are entitled to amounts which will "compensate them for past or future economic losses in their respective orchards."

Both parties assert that the consent decree is clear and unambiguous, but they interpret it differently. Plaintiffs contend that the written agreement incorporated in the consent decree did not "integrate" the prior agreements which the parties had reached in the settlement negotiations.

On its face, the consent decree integrates all the prior agreements; it is clear and complete. Parol evidence is not admissible to vary or contradict its terms. ORS 41.740; Webster et ux. v. Harris, 189 Or. 671, 222 P.2d 644 (1950). Giving the words their usual and normal meanings, the consent decree does not provide for the multiplication of damages either by the arbitrators or by the Court.

This interpretation is reinforced when I consider the terms of the consent decree in the light of the circumstances surrounding the settlement negotiations. ORS 41.740 and 42.220[2] West Los Angeles Institute for Cancer . Research v. Mayer, 366 F.2d 220 (9th Cir. 1966).

Settlement discussions took place between November, 1965, and September, 1966. At that time and for many years before, this Court, in other fume emis-

---

1. ORS 105.810 provides for recovery of treble damages against a person who willfully injures or removes any produce, tree, timber or shrub of a landowner. ORS 105.815 provides for recovery of double damages in an action under ORS 105.810 if the trespass was casual or involuntary.

2. ORS 41.740, the parol evidence rule, provides in part: "[T]his section does not exclude other evidence of the cir-

cumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220, or to explain an ambiguity . . . or to establish illegality or fraud."
ORS 42.220 provides:
"In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language he is interpreting."

sion cases involving aluminum companies, had rejected multiple damages under ORS 105.810 and 105.815.[3] There were no state court decisions allowing multiple damages except in cases where the trespass consisted of the cutting of timber.

Plaintiffs had proposed that the settlement agreement include the following provision: "A court of competent jurisdiction shall rule on the question of the plaintiff's right, if any, to recover multiple damages." The defendant objected, and this provision was deleted from the agreement.

Plaintiffs also contend that doubling of damages is required to compensate them fully for the trespasses. They argue that the purpose of doubling damages under ORS 105.815 is compensatory rather than punitive, and that damage to their fruit orchards, like damage to standing timber, will take many years to correct. The consent decree required the arbitrators to consider both the past and the future economic damage to plaintiffs. The arbitrators, in their awards, did attempt to compensate plaintiffs "fully for their economic losses" and to make plaintiffs "economically whole."

I find that plaintiffs are not entitled to have the awards multiplied.

■■■ The defendant seeks to vacate or modify the award on the grounds listed in ORS 33.320(4)–(7).[4] The defendant contends that the arbitrators' findings and awards do not conform to the terms of the submission. Specifically, the defendant contends that the arbitrators made unnecessary findings on some issues, failed to make sufficiently specific findings on other issues, and awarded unauthorized amounts for attorneys' fees and for time and inflation.

In Oregon, judicial review of an arbitration award is confined to the "strictest possible limits." Brewer v. Allstate Insurance Co., 248 Or. 558, 562, 436 P. 2d 547, 549 (1968).

I have reviewed the arbitrators' findings to which the defendant objects. Although some of the findings are unnecessary and others are not specific, when the findings are viewed in their entirety, they are consistent with the award and do not go beyond the matters submitted.

The objection to the allowance for time and inflation is without merit, because the arbitrators could reasonably consider such an allowance "necessary to compensate" plaintiffs for their "past or future economic damage."

On the issue of attorneys' fees, the arbitrators stated that plaintiffs' need for effective legal representation was considered as a "factor" in the individual awards. But in making the awards, the arbitrators considered not only this "factor" but also many others, some of which they no doubt rejected. They did not necessarily allow attorneys' fees. Arbitrators are not held to the same level of precision and clarity as lawyers and judges.

3. The decisions include: Mabel Macleay Kerr, et al. v. Reynolds Metals Co., Civil No. 4123 (D.Or.1950); W. B. McCallister, et al. v. Reynolds Metals Co., Civil No. 4418 (D.Or.1950); John M. Thorup, et ux. v. Reynolds Metals Co., Civil No. 5884 (D.Or.1952); and Fairview Farms, Inc. v. Reynolds Metals Company, 176 F.Supp. 178 (D.Or.1959).

4. ORS 33.320 provides:

*33.320 Exceptions to award.* [T]he party against whom an award was made may except in writing thereto for any of the following causes:

. . . . .

"(4) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(5) There was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award.

"(6) The arbitrators awarded upon a matter not submitted to them, unless it was a matter not affecting the merits of the decision upon the matters submitted.

"(7) The award was imperfect in matter of form not affecting the merits of the controversy."

In American Almond Prod. Co. v. Consolidated Pecan S. Co., 144 F.2d 448 (2d Cir. 1944), the Court considered two questions: (1) whether the arbitrators exceeded their powers by making certain findings not required by the submission; and (2) whether the arbitrators were permitted to award damages even though no evidence on the damage issue was presented to them. The Court affirmed the arbitrators' award. Judge Learned Hand, writing for the Court, made the following statement, which is particularly appropriate here:

"Arbitration may or may not be a desirable substitute for trials in courts; as to that the parties must decide in each instance. But when they have adopted it, they must be content with its informalities; they may not hedge it about with those procedural limitations which it is precisely its purpose to avoid. They must content themselves with looser approximations to the enforcement of their rights than those that the law accords them, when they resort to its machinery." 144 F. 2d at 451.

I find that the defendant is not entitled to have the award vacated or modified.

Both plaintiffs' motions to multiply the award and the defendant's motion to vacate or modify it are denied.