La Jueza Asociada Señora Pabón Charneco
emitió la opinión del Tribunal.

Arbitration may or may not be a desirable substitute for trials in courts; as to that the parties must decide in each instance. But when they have adopted it, they must be content with its informalities; they may not hedge it about with those procedural limitations which it is precisely its purpose to avoid. They must content themselves with looser approximations to the enforcement of their rights than those that the law accords them, when they resort to its machinery.

(1)

Comparece ante nos la Autoridad de los Puertos de Puerto Rico (en adelante la Autoridad) y nos solicita que revoquemos una Sentencia emitida por el Tribunal de Apelaciones. En esta, el foro apelativo intermedio decretó la nulidad de un Laudo de Arbitraje bajo el fundamento de que se afectó el debido proceso de ley de una parte al ne-gársele acceso a un Informe Pericial previo a su vista de arbitraje.
*421 En el caso de autos debemos resolver si en el ámbito del arbitraje obrero-patronal se socava el derecho de una parte a un debido proceso de ley si no se le proveen mecanismos de descubrimiento de prueba durante las etapas del arbitraje. Ello, aun cuando las partes no pactaran la dispo-nibilidad de esos mecanismos.
Antes de atender este asunto, examinemos los hechos que generaron la controversia de autos.
I
Para agosto del 2007, un grupo de empleadas de la Au-toridad comenzaron a encontrar en el parabrisas de sus automóviles una serie de notas escritas a mano firmadas con el seudónimo de “Os sir a” y “Ossirus”. Según se deduce del testimonio de una de las empleadas, estas notas conte-nían, inter alia, lenguaje sexual y provocativo, dirigido a estas, al punto de que urna de ellas instó urna Querella ante la Policía porque temió por su seguridad. Entre los mensa-jes recibidos se incluían algunos que leían “te he amado en silencio”, “algún día te amaré para .“desde que te vi me he ilusionado contigo” y “pronto estaremos en el paraíso para amarnos”. Los mensajes suscritos por el ente “Ossi-rus” también fueron dejados en el baño de mujeres de la Autoridad y por debajo de la puerta del área de trabajo de las empleadas.
En aras de atender esta preocupante situación, la Auto-ridad contrató los servicios del señor Onofre Jusino, un perito en caligrafía y criminología. La Autoridad le proveyó al señor Jusino las notas suscritas por “Ossirus”, fotos de los escritos dejados en la pared del baño de mujeres, así como escritos presentados en la solicitud de empleo de diversos empleados de la Autoridad. Luego de analizar los escritos, el señor Jusino preparó un Informe de tres (3) páginas en el que concluyó que el autor de las referidas notas era el empleado Daniel A. Pagán Restituyo.
*422 Ante este Informe, y conforme al procedimiento estable-cido en el Convenio Colectivo suscrito por la Autoridad y la Hermandad de Empleados de Oficina, Comercio y Ramas Anexas (en adelante la Hermandad), se citó al señor Pagán Restituyo para una vista administrativa en la cual se le informó sobre los cargos que se formularon en su contra. Durante esta vista, la Hermandad solicitó que se le entre-gara copia del Informe suscrito por el perito Jusino, a lo cual la Autoridad se opuso. Luego de la vista, la Autoridad despidió al señor Pagán Restituyo, y acto seguido, la Her-mandad solicitó un arbitraje acelerado, según lo provee el Convenio Colectivo suscrito por las partes.
El arbitraje en el caso de autos se dividió en dos (2) vistas durante agosto y octubre del 2008. En estas, la Au-toridad ofreció como evidencia en contra del señor Pagán Restituyo el Informe pericial y el testimonio del perito Ju-sino, así como la prueba testimonial del Oficial de Seguri-dad, Roberto Ramos Cruz, del Director de Auditoría y Con-troles Administrativos, José Rivera Medina, y de Glorymar Rodríguez, empleada que recibió algunas de las referidas notas.
Durante estas vistas, la Hermandad objetó que se per-mitiera el testimonio pericial del señor Jusino, toda vez que no se les había entregado copia de su Informe Pericial previo a la vista. El árbitro, Jorge L. Torres Plaza, permitió el testimonio del señor Jusino y concedió un receso para que la Hermandad obtuviera copia del Informe Pericial y lo examinara antes de contrainterrogar al perito.
Posteriormente, el 24 de octubre de 2008, el árbitro Torres Plaza emitió un Laudo en el cual confirmó que el des-pido del señor Ayala Restituyo estuvo justificado. El árbi-tro consignó que la Hermandad tuvo oportunidad de contrainterrogar e impugnar el testimonio pericial del se-ñor Jusino y no logró hacerlo. A su vez, dictaminó que dio gran peso, tanto al Informe Pericial como al testimonio del perito.
*423 Insatisfechos con el Laudo, el 24 de noviembre de 2008, la Hermandad presentó una Petición de Revisión de Laudo de Arbitraje Laboral ante el Tribunal de Primera Instan-cia, Sala Superior de San Juan. La Hermandad adujo que el Laudo en controversia era nulo, ya que no se le proveyó copia del Informe Pericial previo a la vista de arbitraje, lo cual tuvo el efecto de violar el debido proceso de ley del empleado despedido. El 2 de marzo de 2009, el foro de ins-tancia confirmó la determinación del árbitro.
Aún inconforme, la Hermandad presentó un recurso de certiorari ante el Tribunal de Apelaciones en el cual esbozó los mismos argumentos que presentó ante el Tribunal de Primera Instancia. El foro apelativo intermedio expidió el auto, y el 17 de junio de 2009 revocó la determinación del foro de instancia y declaró nulo el Laudo. El tribunal a quo estimó que se había violado el debido proceso de ley del empleado al no permitir que tuviera acceso al Informe Pe-ricial previo a la vista de arbitraje. Además, adujo que la breve oportunidad que se le dio en la vista para revisar el Informe no subsanó la violación constitucional, ya que ese tiempo era insuficiente para impugnar un Informe Pericial.
Insatisfechos con esa decisión, la Autoridad presentó un recurso de certiorari ante este Tribunal y argumentó la comisión del siguiente error:
Erró el Tribunal de Apelaciones al determinar que el laudo de arbitraje no fue emitido conforme a derecho, al no acceder la Autoridad a una solicitud de descubrimiento de prueba (no entregaron un informe pericial) previo a la vista de arbitraje. Como consecuencia de lo anterior, se revocó la Sentencia del TPI que confirmó el Laudo, constituyendo un error tal determinación. (Enfasis suplido y en el original). Petición de certiorari, pág. 4.
Examinado el recurso presentado, el 29 de enero de 2010 acordamos expedir. Las partes han comparecido, por lo cual nos corresponde resolver la controversia planteada sin trámite ulterior.
*424 II
A.
In limine, el concepto arbitraje se utiliza para demarcar al método alternativo de solución de disputas más formal que existe como alternativa al litigio tradicional. Señala el profesor Fernández Quiñones que en el arbitraje, “las partes en disputa someten y presentan su caso ante un tercero neutral que está investido con la facultad de rendir una decisión”. D. Fernández Quiñones, El arbitraje obreropatronal, Colombia, Ed. Forum, 2000, pág. 9. Añade que esta institución aspira a
... eliminar la solemnidad, los inconvenientes y dificultades del proceso judicial. También tiene como facultad imponerle un carácter excluyente al proceso judicial. Ello se deriva de que una cláusula de arbitraje es un contrato que impide a los jueces y tribunales conocer de los conflictos o cuestiones liti-giosas sometidas a arbitraje. Id., pág. 10.
En el ámbito laboral, el arbitraje surge como parte del proceso de negociación colectiva, el cual tiene como fin preparar un Convenio Colectivo. En cuanto a este, hemos reiterado su trascendental importancia para el ordenamiento jurídico, ya que “representa el triunfo del poder de la negociación sobre la fuerza, de la cordura y la razón sobre la temeridad y la violencia, y de la necesidad que todos tenemos de vivir en armonía los unos con los otros”. U.I.L. de Ponce v. Dest. Serrallés, Inc., 116 D.P.R. 348, 352 (1985).
A esos efectos, cuando en un Convenio Colectivo se pacta someter a arbitraje las controversias que puedan surgir entre patrono y empleados, se crea un foro alterno a los tribunales, lo cual tiene el efecto de sustituir a los jueces por los árbitros. HIETel v. PRTC, 182 D.P.R. 451, 456 (2011); Condado Plaza v. Asoc. Emp. Casinos P.R., 149 D.P.R. 347, 352 (1999). En nuestro ordenamiento se “favo- *425 rece el uso de métodos alternos de solución de conflictos y con mayor particularidad el arbitraje”. Vivoni Farage v. Ortiz Carro, 179 D.P.R. 990, 1001 (2010). En el ámbito obrero-patronal se favorece el arbitraje con mayor premi-nencia, ya que “es un medio más apropiado que los tribu-nales de justicia a la hora de resolver disputas que surjan de la relación contractual entre las partes, ya que es menos técnico, más flexible y menos oneroso”. (Enfasis suplido). HIETel v. PRTC, supra, pág. 456.
A su vez, “[e]s indubitado el carácter contractual que comporta la figura del arbitraje”. VDE Corporation v. F & R Contractors, 180 D.P.R. 21, 33 (2010). Es por ello que la sustitución de foros que presume la figura del arbitraje solo se puede exigir cuando lo hayan acordado las partes. En el ámbito obrero-patronal, este aspecto contractual del arbi-traje tiene mayor relevancia ya que, como vimos, es pro-ducto de la negociación colectiva. “Debe entenderse que el mismo surge como resultado de la voluntad de las partes de establecer en el convenio colectivo un mecanismo o procedi-miento eficiente, que garantice la solución de disputas de forma justa”. A. Acevedo Colom, Legislación de relaciones del trabajo comentada, San Juan, [s. ed.], 2007, pág. 227. Se añade que como parte de las negociaciones y prestaciones efectuadas por las partes, se llega a un mecanismo que
... presenta una ventaja considerable para las partes, si se compara con el litigio tradicional. Se trata de un mecanismo que no está revestido de la formalidad que aplica ante los tribunales de Justicia. Las Reglas de Procedimiento Civil y Evi-dencia no son de aplicación en las vistas de arbitraje, con ex-cepción de aquellos casos en que las partes expresamente dispongan lo contrario. (Énfasis suplido). íd., pág. 228.
Por ello, no hay duda de que la flexibilidad que repre-senta el arbitraje obrero-patronal como método de solución de disputas es uno de sus atractivos principales. Hemos re-conocido anteriormente que “[l]a flexibilidad que caracteriza el proceso de arbitraje se logra porque las reglas de procedi-miento civil no le aplican. ... El propósito de esto es respetar *426 uno de los principios básicos del arbitraje, que es la finali-dad en las dilucidaciones de controversias por medio de un procedimiento más ágil y menos formal”. HIETel v. PRTC, supra, pág. 457.
En reconocimiento de esa realidad, es principio conocido que, en ausencia de pacto en contrario, las Reglas de Procedimiento Civil y las de Evidencia no aplican a los procesos de arbitraje. Véanse: Fernández Quiñones, op. cit., págs. 254 y 729; N. Brand y M. Biren, Discipline and Discharge in Arbitration, Virginia, BNA Books, 2008, págs. 429-460; F. Elkouri, How Arbitration Works, 6ta ed., Washington, DC, BNA Books, 2003, pág. 341.
Cónsono con lo anterior, los mecanismos de descu-brimiento de prueba que proveen las Reglas de Procedi-miento Civil no son exigibles en los procesos del arbitraje a no ser que exista un pacto en contrario. HIETel v. PRTC, supra, pág. 457. Es decir, cuando las partes pactan que no existirá descubrimiento de prueba en su proceso de arbi-traje, se renuncia a los privilegios procesales que podrían disfrutar en un tribunal de justiciad.(2)
La razón para esta norma es obvia. El descubrimiento de prueba en muchas ocasiones puede convertirse en un pro-ceso complejo, el cual está al arbitrio de las partes en los pleitos judiciales y que atenta contra los fines de flexibili-dad, reducción de costos y rapidez que persigue la figura del arbitraje.
B.
En cuanto a la revisión judicial de los laudos de arbitraje, teniendo presente la voluntad de las partes y la *427 preminencia que se le ha reconocido al arbitraje como mé-todo alterno de solución de disputas, hemos establecido que las determinaciones de los árbitros gozarán de gran deferencia. Condado Plaza v. Asoc. Emp. Casinos P.R., supra, pág. 352; J.R.T. v. Junta Adm. Muelle Mun. de Ponce, 122 D.P.R. 318 (1988). Esta norma de autolimitación con-lleva que los tribunales no lleguen a “considerar los méri-tos de un laudo, independientemente de que de haber sido la controversia inicialmente resuelta a nivel judicial, la de-terminación final hubiese sido otra”. Acevedo Colom, op. cit., pág. 271.
Es por ello que hemos establecido que la revisión judicial de los laudos emitidos en un procedimiento de arbitraje se “limitará a las instancias en las cuales quede demostrada la existencia de fraude, conducta impropia del árbitro, falta del debido proceso de ley, ausencia de jurisdicción, omisión de resolver todas las cuestiones en disputa o que el laudo sea contrario a la política pública”. C.O.P.R. v. S.P.U., 181 D.P.R. 299, 328 (2011).
Esta norma de autolimitación encuentra excepción cuando las partes pactan que los laudos de arbitraje se emitirán conforme a derecho. En esas instancias, los árbitros están obligados a resolver las controversias de acuerdo con las doctrinas legales prevalecientes y aceptadas. C.O.P.R. v. S.P.U., supra, pág. 329. Cuando exista la obligación de que los laudos se emitan conforme a derecho, la revisión judicial será más incisiva, por lo cual “los tribunales podrán corregir errores jurídicos en referencia al derecho aplicable”. Condado Plaza v. Asoc. Emp. Casinos P.R., supra, pág. 353.(3)
Conforme hemos discutido, entre las instancias que per- *428 xniten la revisión judicial incisiva se encuentra la falta de debido proceso de ley en el procedimiento de arbitraje. Conviene indagar detenidamente lo que significa este prin-cipio constitucional.
C.
En su concepción abarcadora, el debido proceso de ley se refiere al “derecho de toda persona a tener un proceso justo y con todas las debidas garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo”. Marrero Caratini v. Rodríguez Rodríguez, 138 D.P.R. 215, 220 (1995). En nuestro ordenamiento, este principio esencial de un sistema democrático se recoge en la Sec. 7 del Art. II de la Constitución de Puerto Rico(4) y en la Quinta y Decimocuarta Enmiendas de la Constitución de Estados Unidos.(5) En su sustrato, este derecho garantiza que los ciudadanos no perderán su libertad o su propiedad sin la oportunidad básica de ser oído.
Este derecho fundamental se manifiesta en dos dimensiones: la sustantiva y la procesal. Domínguez Castro et al. v. E.L.A. I, 178 D.P.R. 1, 35 (2010). En su vertiente sustantiva, el debido proceso de ley representa una barrera para acciones estatales arbitrarias o caprichosas que afecten los derechos fundamentales de los ciudadanos. Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881, 887 (1993). Por su parte, en su vertiente propiamente procesal, el debido proceso de ley requiere que, de verse afectado algún derecho de propiedad o libertad de un ciudadano, este tendrá acceso a un proceso que se adherirá a los principios de justicia e imparcialidad. Id., págs. 887-888.
Consecuentemente, en un procedimiento de arbitraje en el que un ciudadano está expuesto a perder su empleo, no *429 hay duda que se debe cumplir con algún tipo de debido proceso de ley. HIETel v. PRTC, supra, pág. 460. Como co-menta el profesor Fernández Quiñones, en un procedi-miento de arbitraje “pueden estar implicados derechos de rango constitucional y de carácter estatutario. Ello de suyo reclama la presencia ineludible de unos requisitos procesa-les que garanticen el respeto y cumplimiento de esos derechos”. Fernández Quiñones, op. cit., pág. 544.(6)
En cuanto a cuál es el debido proceso que se debe soste-ner en el arbitraje obrero-patronal, comenta el profesor más adelante:
Si se toman en consideración las características básicas del procedimiento de arbitraje —flexibilidad, rapidez e informali-dad — , puede inferirse que el debido procedimiento de ley que se exige es uno que no puede estar matizado de la rigidez que particulariza una vista judicial. Por consiguiente, la vista no se gobierna estrictamente por las reglas de evidencia. ... En la medida en que se proporcione a las partes la oportunidad de prepararse para hacer frente a lo que es objeto de controver-sia, de estar presente en las vistas que se celebran, de escuchar los testimonios en su contra y de contrainterrogar a los testigos contrarios y de que el laudo se funde en la evidencia que ha desfilado ante el árbitro se ha respetado el debido procedi-miento de ley. (Énfasis suplido). Fernández Quiñones, op. cit., págs. 545-546.
Ante esta realidad, podemos colegir que el debido proceso de ley que se exige en un procedimiento de arbitraje es el mínimo necesario que acredite una resolución justa de la controversia. Por lo tanto, y según el profesor Fernández Quiñones, las normas del debido proceso de ley que deben regir los procesos de arbitraje son paralelas a las existentes en el ámbito del Derecho Administrativo. Véase Fernández Quiñones, op. cit., pág. 546.
En esencia, en todo proceso de arbitraje se debe cumplir con los elementos básicos de la justicia, lo cual *430 conlleva un trato justo e imparcial. Por eso, hace décadas en S.I.U. de P.R. v. Otis Elevator Co., 105 D.P.R. 832 (1977), establecimos que se cumple con el debido proceso de ley en el ámbito del arbitraje obrero-patronal si se le notifica e informa al agraviado de los cargos en su contra, se celebra una vista y se le da oportunidad al agraviado de someter evidencia. íd., pág. 837. Véase, también, Fernández Quiñones, op. cit., pág. 544.
III
Según la discusión doctrinal anteriormente expuesta, pasamos a resolver la controversia ante nuestra considera-ción.
Conforme reseñamos, en el caso de autos, la Herman-dad solicitó que se le entregara copia del Informe caligrá-fico suscrito por el perito Onofre Jusino previo a la vista de arbitraje. No hay duda de que ese petitorio se debe consi-derar como una solicitud de descubrimiento de prueba, es-pecíficamente como una solicitud de producción de documentos. (7)
Ab initio, resulta imperativo mencionar que el Convenio Colectivo suscrito entre la Autoridad y la Hermandad no contempla la disponibilidad de mecanismos de descubri-miento de prueba. Como vimos, las disposiciones de un Convenio Colectivo son de naturaleza eminentemente contractual, por lo cual tiene fuerza de ley entre las partes y se debe cumplir conforme a lo que en él se establece. HIETel v. PRTC, supra, pág. 458. Por ende, no existía razón al-guna, de acuerdo con el texto del Convenio Colectivo, por la *431 cual la Autoridad tuviera que acceder a la solicitud de pro-ducción de documentos de la Hermandad.
No obstante, la Hermandad argumenta que la ausencia de mecanismos de descubrimiento de prueba en la contro-versia de autos tiene el efecto de socavar el derecho a un debido proceso de ley del empleado agraviado. No le asiste la razón.
De un análisis de los autos del caso de epígrafe se deduce que todos y cada uno de los requisitos mínimos del debido proceso de ley en su vertiente procesal se cumplieron. Al empleado afectado, Daniel A. Pagán Resti-tuyo, se le notificó sobre los cargos en su contra mediante carta de 9 de noviembre de 2007, en la cual se le citó para una vista administrativa y se le apercibió que podía asistir con un representante de la Hermandad. Posterior a esa vista, mediante carta de 7 de diciembre de 2007 se le des-pidió y se le puso en conocimiento de las razones para su despido, y de las secciones del Convenio Colectivo que su conducta infringió.
Por otro lado, en el caso de autos se celebraron tres (3) vistas. La vista administrativa informal se llevó a cabo en noviembre de 2007. En ella, la Hermandad y el empleado supieron de la existencia del Informe Pericial del señor Jusino. Posteriormente, se celebraron dos (2) vistas de ar-bitraje durante agosto y octubre de 2007. En estas se le dio completa oportunidad a la Hermandad y al empleado para someter evidencia y contrainterrogar testigos. Además, se le dio un tiempo durante la vista para que revisaran el In-forme Pericial del señor Jusino, previo a su contra-interrogatorio.
Todos estos hechos incontrovertidos demuestran que en el caso de autos se cumplió con las exigencias mínimas del debido proceso de ley, según lo establecido en nuestra jurisprudencia. En ausencia de violación a ese principio, los tribunales están obligados a mostrar deferencia a la decisión de los árbitros (C.O.P.R. v. S.P.U., supra, pág. *432 328), por lo cual no procede declarar nulo el Laudo en el caso de autos.
No obstante, el Tribunal de Apelaciones concluyó que en el caso de autos hubiera sido una gestión fútil para la Her-mandad contratar otro perito calígrafo para impugnar el testimonio del señor Jusino, ya que, sin acceso al Informe Pericial, “el perito contratado no tendría sobre qué docu-mentos emitir su opinión o preparar un informe .. .”.(8) Esta conclusión especulativa —además de ignorar el hecho de que durante la vista el árbitro le concedió un término a la parte para revisar el Informe Pericial previo al contrainte-rrogatorio del señor Jusino — - pasa por alto que en nuestro ordenamiento jurídico el testimonio pericial puede estar basado en datos que lleguen al conocimiento del perito du-rante la vista en que este se apreste a testificar. Véase Regla 704 de Evidencia, 32 L.P.R.A. Ap. VI.
Por otro lado, el hecho de que en el caso de autos no se le diera acceso a la Hermandad a un Informe Pericial previo a la vista de arbitraje no se traduce, necesariamente, a una violación al debido proceso de ley. En este Informe el perito Jusino se limita a informar sus credenciales, enumerar los documentos que la Autoridad le hizo llegar y anunciar su conclusión, sin más, de que las notas en controversia las escribió el señor Pagán Restituyo. Difícilmente se puede concluir que el receso que proveyó el árbitro durante la vista de arbitraje fue insuficiente para revisar un Informe tan limitado. Ante ese escenario, no era un esfuerzo fútil que la Hermandad contratara su propio perito para tratar de impugnar la credibilidad del perito Jusino, tanto para con su Informe así como para su testimonio.
Por otro lado, el Informe Pericial no fue la única eviden-cia que presentó la Autoridad en el caso de autos. Como hemos discutido, el hecho de que el árbitro consideró que el *433 Informe y el testimonio pericial tenían el mayor valor pro-batorio, no tiene el efecto de convertirlo en la única prueba ni en eliminar al resto de los testimonios presentados. No debemos ignorar la corriente moderna en el ámbito del ar-bitraje obrero-patronal que permite a los árbitros basar sus conclusiones en informes periciales de caligrafía. Con respecto a esto, se ha dicho lo siguiente: “[w]here the document examiner is qualified as an expert, the examiner’s conclusive determination will be accorded great weight when it corroborates testimonial or other evidence presented at the hearing”. Brand y Biren, op. cit., pág. 445.
Precisamente eso fue lo que ocurrió en la controversia ante nuestra consideración. El árbitro le dio un gran peso al Informe del perito Jusino, ya que fue corroborado por su testimonio y por la evidencia circunstancial presentada en la vista. Sencillamente, la Hermandad tuvo las herramien-tas para impugnar el testimonio del señor Jusino y decidió no utilizarlas. Las fallas en la estrategia legal de la Her-mandad no se deben convertir en un vehículo para crear una excepción innecesaria en el ámbito del arbitraje obre-ro-patronal que le exija a las partes someterse a las forma-lidades de procesos de descubrimiento de prueba, aun cuando no lo hayan pactado.
En conclusión, y de acuerdo con el derecho aplicable, no encontramos razones para trastocar la conocida norma que establece que el descubrimiento de prueba no es requisito inherente de los procedimientos de arbitraje. No podemos permitir que cuando dos (2) partes han pactado que el ar-bitraje entre ellos será flexible y sin ataduras a las Keglas de Procedimiento Civil, y a pesar de que se cumpla con las garantías mínimas de nuestra jurisprudencia en cuanto al debido proceso de ley, el acuerdo quede bajo la eterna e impredecible nube revisora de los tribunales para encon-trar violaciones al debido proceso de ley bajo excepciones que atentan contra los cimientos básicos de los métodos altemos de solución de disputas.
*434 IV
Por todos los fundamentos antes discutidos, se revoca la Resolución emitida por el Tribunal de Apelaciones el 17 de junio de 2009. Consecuentemente, se confirma el Laudo emitido por el árbitro Jorge L. Torres Plaza el 24 de octubre de 2008.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión disidente, a la cual se unió el Juez Presidente Señor Hernández Denton, la Jueza Asociada Señora Fiol Matta y el Juez Asociado Señor Estrella Martínez.

 American Almond Prod. Co. v. Consolidated Pecan S. Co., 144 F.2d 448, 451 (1944), Juez Learned Hand.

 Como ha explicado un Tribunal Federal de Apelaciones: “An arbitration hearing is not a court of law. ... When contracting parties stipulate that disputes will be submitted to arbitration, they relinquish the right to certain procedural niceties which are normally associated with a formal trial. ... One of these accoutrements is the right to pre-trial discovery”. Burton v. Bush, 614 F.2d 389, 390 (4to Cir. 1980).

 Precisamente, el Convenio Colectivo suscrito entre la Autoridad de los Puer-tos de Puerto Rico y la Hermandad de Empleados de Oficina, Comercio y Ramas Anexas establece que los Laudos se deberán emitir conforme a derecho. Véase Apén-dice de la Petición de certiorari, pág. 89.

 Art. II, Sec. 7, Const. P.R., L.P.R.A., Tomo 1, ed. 2008, pág. 296.

 Emdas. V y XIV, Const. EE. UU., L.P.R.A., Tomo 1, ed. 2008, págs. 189 y 206.

 Obviamente, las exigencias constitucionales del debido proceso de ley no aplican en instancias en las cuales entes privados decidan someter sus controversias a la adjudicación de un árbitro.

 Este mecanismo de descubrimiento de prueba “permite que los documentos y objetos en posesión de una parte, y que sean pertinentes a la solución de una con-troversia, puedan estar disponibles a la otra parte de manera que se eliminen las sorpresas, se simplifiquen las cuestiones planteadas y se aligeren los procedimientos”. García Rivera et al. v. Enriquez, 153 D.P.R. 323, 334 (2001).

 Sentencia del Tribunal de Apelaciones, Apéndice, pág. 120.