**SHINTO SHIPPING CO. LTD. (a/k/a Shinto Kaiun K.K.), a Foreign Corporation, Plaintiff,**

**v.**

**FIBREX & SHIPPING CO., INC., Defendant.**

**No. 76–165.**

United States District Court, N. D. California.

Dec. 13, 1976.

David M. Salentine, Bogle & Gates, Seattle, Wash., Charles B. Bateman, Graham & James, San Francisco, Cal., for plaintiff.

Clifford B. Alterman, Kell, Alterman & Runstein, Portland, Or., for defendant.

## ORDER

BEEKS, Senior District Judge.

Two motions are before the Court: (1) plaintiff's motion to compel Bank of California, a garnishee, to answer interrogatories concerning defendant's "debts, credits, or effects" held by the garnishee outside the state of California and (2) defendant's motion for a temporary restraining order and preliminary injunction to forestall arbitration proceedings now pending in Japan. Both motions present somewhat novel legal questions for the Court's consideration.

The chain of events which has impelled this case to its current posture should be recounted. In June, 1975 plaintiff, a Japanese corporation, and defendant, an Oregon corporation, entered into a voyage charter whereby defendant contracted for the use of the motor vessel SHINYO MARU owned by plaintiff. Due to circumstances which are in dispute, the vessel was never accepted by defendant nor was the agreed freight ever paid. The charter provided for arbitration of disputes arising under its provisions by the Japan Shipping Exchange, Inc. in Tokyo, Japan. Plaintiff applied to the Japan Shipping Exchange for arbitration on December 12, 1975 seeking to recover the unpaid freight because of an alleged wrongful breach of the charter. Defendant did not immediately thereafter answer or appear, and on January 23, 1976 plaintiff filed this action pursuant to 9 U.S.C. § 8 to enforce arbitration. Notwithstanding defendant's amenability to service in Oregon, plaintiff brought suit in the Northern District of California causing process to issue *in personam* by way of foreign attachment as provided in Supplemental Rule B, Fed.R. Civ.P. Garnishee was served at its main office in San Francisco. Presumably this was a tactical choice designed to obtain

security pending the outcome of the contemplated arbitration. Defendant transacted no business in California and was not a California resident, thus satisfying the requirements for Supplemental Rule B attachment.

The personal property purportedly attached consists of funds belonging to defendant but in the possession of garnishee, said funds having been deposited in one or more accounts carried by garnishee at branch banks outside California. Defendant has submitted to this Court's jurisdiction thereby insuring jurisdiction over its person independent of the disputed attachment.

Plaintiff served garnishee with interrogatories, including those now at issue, in March, 1976. Garnishee originally refused either to answer or make proper objection to them, but following a Court order of June 9, 1976 garnishee did so answer or make objection to each interrogatory.

Defendant voluntarily joined the arbitration proceeding on or about March 19, 1976 prior to answering the complaint herein. Arbitration was formally commenced June 28, 1976 with the appointment of three arbitrators to hear the dispute. The course of arbitration to date has been as follows: a complaint and an answer have been submitted, a reply has been or forthwith will be (by representation of plaintiff's counsel) submitted, considerable documentary evidence has been amassed and supplied to the arbitrators, and the arbitrators have met at least once to consider the evidence.

While arbitration proceeded, depositions in the case at bar were duly noticed and taken during August and September of 1976. The deposition of International Shipping Company, Inc. was taken on August 27, 1976 in Seattle, Washington. Depositions of Hudson Lothian and Fred F. Noonan Company, Inc. were originally noted for August 30, 1976 but were subsequently renoted and taken on September 27, 1976 in Portland, Oregon. These depositions dealt in substantial part with the merits of the controversy which had been earlier committed to arbitration. Counsel for defendant received proper notice of these depositions and fully participated in their taking. Plaintiff concedes that the depositions were intended for use in the arbitration proceeding. Defendant, too, was cognizant of this intent at least as early as August 27, 1976, the date of the first deposition. Defendant did not at any time from then to the conclusion of all of the aforementioned depositions protest to the Court such improper use of procedures authorized by the Federal Rules of Civil Procedure, nor did it seek relief therefrom pursuant to said rules. A formal challenge to the propriety of such procedure was not forthcoming until September 28, 1976 when defendant belatedly filed its answer herein. Defendant asserted in its answer that plaintiff had waived its right to insist on arbitration and, in effect, elected against it by employing compulsory federal process to pursue the merits of the controversy. Defendant asked that arbitration be enjoined and in its amended answer of October 26, further asked that the Court hear this charter dispute on the merits. Defendant's motion now under consideration reiterates the waiver charge and similarly asks for injunctive relief together with a hearing on the merits.

*Plaintiff's Motion to Compel Discovery*

Garnishee's objection to the unanswered interrogatories and parts thereof goes to their relevancy. These interrogatories seek to elicit information regarding the location and description of funds, credits and other property belonging to defendant but held by garnishee at branch offices without the state of California. Plaintiff, in order to strengthen and clarify his position, has since narrowed these inquiries—as well as the contended scope of its Supplemental Rule B attachment—to garnishee's Portland, Oregon branch and property held thereat. This more limited focus does not assist plaintiff, and his motion is denied. I further hold that the attachment herein does not confer jurisdiction over defendant's property at garnishee's remote branch offices.

■ This ruling follows from the sound analysis and holding of *Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50 (2d Cir. 1965). In *Sabre Shipping* the Second Circuit held that while the jurisdictional reach of federal judicial process must be determined as a matter of federal law, it is both proper and sensible to adopt state law as the federal rule where the inquiry concerns the legal status and interrelationship of branch banks. *Sabre Shipping* involved an attempt to attach funds of Sabre Shipping Corporation on deposit at a Manhattan branch office of Manufacturers Hanover Trust Company in the Southern District of New York by serving the summons and attachment process at the company's Brooklyn branch office in the Eastern District of New York. Under New York state law these branch banks were viewed as distinct entities for purposes of fixing the situs of a debt, and the court invoked that law to vitiate the attachment. The Second Circuit explained its approach thusly:

> "Branch banking is typically a matter for state regulation, and a decision here contrary to the general rule of the state might have disruptive consequences for the state banking system. [citation omitted] Furthermore, there is no established admiralty doctrine on this question, such as would reflect a predominate federal interest." 341 F.2d 50 at 52.

This rationale is well-founded and no less persuasive in the case at bar despite some added interstate flavor surrounding the subject attachment. I therefore hold that the legal efficacy of serving one bank office or branch with attachment process to reach accounts carried at other branches or offices, whether the banking operation be intrastate or interstate in character, is to be determined by reference to the law of the state in which process issues. However, if due to the interplay of the laws of interested states manifest injustice or inordinate hardship might attend this rule's application to an interstate banking system, an exception should be recognized. No such injustice or hardship is apparent here.

■ California Code of Civil Procedure § 542.5 provides in relevant part that: ". . . debts owing to the defendant by any of the following financial institutions: (a) banks; (b) savings and loan associations; (c) title insurance companies or underwritten title companies (as defined in Section 12402 of the Insurance Code); (d) industrial loan companies (as defined in Section 18003 of the Financial Code), maintaining branch offices, or credits or other personal property whether or not the same is capable of manual delivery, belonging to the defendant and in the possession of or under the control of such financial institution shall be attached by leaving a copy of the writ and the notice, together with a copy of the complaint if required hereunder, with the manager or other officer of such financial institution at the office or branch thereof at which the account evidencing such indebtedness of the defendant is carried, or at which such financial institution has credits or other personal property belonging to the defendant in its possession or under its control; and no attachment shall be effective as to any debt owing by such financial institution if the account evidencing such indebtedness is carried at an office or branch thereof not so served, or as to any credits or other personal property in its possession or under its control at any office or branch thereof not so served."

This statute, by clearest implication if not its express terms, discloses the applicable California law. A California state court would, I am confident, hold the attachment in question invalid as to remote branch accounts. That being so, I adopt the result, and plaintiff's motion and attachment are defeated.

Plaintiff presses the Court to reject the *Sabre Shipping* analysis, because the situs of the subject account(s) has been particularly specified thus alleviating the need for an extensive and disruptive systemwide search. While this circumstance does lessen the burdensome impact of foreign attachment herein, the general rule of reference to state law should nonetheless be honored.

The exceptions would soon consume the rule were every peculiar mitigating circumstance seized upon as justifying departure therefrom. Plaintiff's appeal for exceptional treatment is more appropriately a matter for the consideration of state lawmakers who have traditionally assumed primary responsibility in the regulation of branch banking.

### Defendant's Motion for Injunctive Relief

■ Generally a party cannot invoke arbitration once having brought suit in the federal court and utilized compulsory federal procedure in its preparation for trial on the merits. A waiver of arbitration would be deemed to have taken place. *See, e. g., Cornell & Company v. Barber & Ross Company,* 123 U.S.App.D.C. 378, 360 F.2d 512 (1966). The circumstances of this case and the context in which the waiver question herein arises are out of the ordinary. Plaintiff filed this action under Title 9 of the United States Code for the very purpose of compelling arbitration. The deposition proceedings herein were not looking toward litigation on the merits but rather were plainly and confessedly earmarked for use in arbitration. This is, I believe, an improper use of the federal forum against which defendant was entitled to protection. *See* 4 J. Moore ¶ 26.54, at 26–104 (2d ed. 1948) [and cases cited therein]. Had defendant sought relief from the Court before or during these objectionable proceedings, it would certainly have received a sympathetic hearing. Defendant, however, chose to participate fully and repeatedly in such proceedings intending to later assert the waiver claim when the depositions had progressed sufficiently far, in defendant's judgment, to make out a strong case. Defendant so concedes. It was not misled as to the intended use of the depositions, and it made a calculated decision to withhold objection at the time hoping to circumvent arbitration altogether by later prevailing on its waiver claim. In the meantime, as defendant's plan unfolded, arbitration moved steadily forward with both parties expending additional time and resources in that forum. The arbitration process is now well underway and, according to at least one of plaintiff's affiants, the arbitrators' decision may issue within a few months. Consequently, defendant's position is now less worthy of sympathy, and its right to relief considerably more doubtful.

■ A dominant and venerable federal policy favors arbitration, and "[w]aiver, therefore, is not to be lightly inferred . . . ." *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir. 1968); *accord, Robert Lawrence Company v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 410 (2d Cir. 1959). A finding of waiver must be supported by convincing evidence and clear equity. Defendant has failed to make such a showing. Regarding plaintiff's course of conduct, the most that can be said—and I say it emphatically—is that it was improper. Beyond that, however, it cannot be said that plaintiff's conduct vis-a-vis defendant was misleading (at least with respect to the latter depositions) or inconsistent with plaintiff's early-avowed intention to arbitrate its grievance. Plaintiff brought this suit to enforce arbitration not to litigate its grievance, and defendant cannot forthrightly claim surprise or unavoidable prejudice by reason of the subject depositions. Defendant had an immediate and sufficient remedy: moving for a protective order under Fed.R.Civ.P. 26(c) or to terminate or limit examination under Fed.R.Civ.P. 30(d). It rejected such contemporaneous remedies and lodged the instant motion after the fact.

Neither does equity commend defendant. Its participation and complicity in the improper procedure were knowing and conspicuous. Moreover, defendant has lent its full cooperation to arbitration which now advances steadily closer to final decision. This peculiar feature of this case sharply distinguishes it from most, if not all, of the cases cited by defendant in support of its motion. One such case prominently mentioned is *Empresa Maritima De Transportes, S.A. v. Transatlantic and Pacific Corp.,* 200 F.Supp. 520 (S.D.N.Y.1959) in which that court, in essence, forbade discovery on the merits in a suit filed to en-

force arbitration. It further strongly suggested that such discovery, if effected, would constitute a waiver of arbitration. *Empresa*, though, treated the questions of waiver and permissible scope of discovery in a very different context from that presented here. Defendant in *Empresa*, in contrast to defendant at bar, objected to the proposed discovery and refused to participate therein and, significantly, arbitration was not yet underway in *Empresa* at the time waiver was considered. In any event, I disapprove of *Empresa*, if, and to the extent that, it would dictate a result different from that which I have reached.

Accordingly, and for the foregoing reasons, both motions are denied.