**TOTEM MARINE TUG & BARGE, INC.**

v.

**NORTH AMERICAN TOWING, INC.**

Civ. A. No. 76–2601.

United States District Court,
E. D. Louisiana.

March 31, 1977.

Joseph V. Ferguson, II, New Orleans, La., Roy Morrow Bell, Miller, Boyko & Bell, San Diego, Cal., for plaintiff.

Jerald P. Block, Thibodaux, La., for defendant.

SCHWARTZ, District Judge.

On a former day this matter came before the Court on the motion of Totem Marine Tug & Barge, Inc. to vacate or modify an arbitration award arising out of a time charter agreement (9 U.S.C. § 10 and § 11) and the application of North American Towing, Inc. for confirmation of the arbitrators' award (9 U.S.C. § 9). Now after due consideration of the arguments and memoranda of counsel, the record and the law, the Court makes the following findings of fact and conclusions of law.

To the extent that any of the following findings of fact constitute conclusions of law they are adopted as such, and to the extent that the conclusions of law constitute findings of fact, they are adopted as such.

In the instant proceeding, Totem seeks vacation or modification of the arbitration award on two principal bases: first, that the majority arbitrators exceeded the scope of their authority in expanding the issues submitted to them to include the question of charter hire; and second, that the arbitrators erroneously considered evidence which was not before them during the hearing but which was obtained through counsel for North American following adjournment of the hearings.

The role of the Court in a proceeding such as this one is severely limited. *Office of Supply, Government of Republic of Korea v. New York Navigation Co.*, 469 F.2d 377 (2nd Cir. 1972); *Amicizia Societa Navegazione v. Chilean Nitrate and Iodine and Sales Corp.*, 274 F.2d 805 (2nd Cir.), cert. den'd, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960); *Fukaya Trading Co., S. A. v. Eastern Marine Corp.*, 322 F.Supp. 278 (E.D.La., 1971). There exists a presumption in favor of the arbitration award and the courts have great hesitancy upsetting such an award. *Karppinen v. Karl Kiefer Mach. Co.*, 187 F.2d 32 (2nd Cir. 1951); *General Construction Co. v. Hering Realty Co.*, 201 F.Supp. 487 (E.D.S.C., 1962); *Sociedad Armadora Aristomenis Pan. v. Tri-Coast SS Co.*, 184 F.Supp. 738 (S.D.N.Y., 1960); *Gramling v. Food Machinery and Chemical Corp.*, 151 F.Supp. 853 (W.D.S.C., 1957); *Application of States Marine Corp. of Delaware*, 127 F.Supp. 943 (S.D.N.Y., 1954). The role of the Court under Title 9 is limited to ascertaining whether or not there exists one of the specific grounds for vacation or modification of an award set out therein. *Bell Aerospace Co., Division of Textron, Inc. v. Local 516, International Union, et al.*, 500 F.2d 921 (2nd Cir., 1974); *Fukaya Trading Co. v. Eastern Marine Corp., supra.* The burden in such inquiry rests with the party seeking to vacate the award. *American Almond Products Co. v. Consolidated Pecan Sales Co.*, 144 F.2d 448 (2nd Cir., 1944); *Application of States Marine Corp. of Delaware, supra.*

## FACTS

In June 1975, the parties to this litigation and the arbitration giving rise to it entered into a time charter agreement whereby Totem Marine Tug & Barge, Inc. chartered

the M/V KIRT CHOUEST, owned by North American Towing, Inc. The term of the charter was six months. According to the terms of the charter party the vessel was to be delivered to the charterer at Galliano, Louisiana (paragraph III). At the expiration of the term of the charter the vessel was to be redelivered to the owner at Galliano or "other port mutually agreed upon" (paragraph VI). At paragraph XXIV of the charter party it is provided that, "[a]ny controversies or claims between Owner and Charterer arising out of or relating to any provision of the Time Charter Agreement" shall be submitted for arbitration.

On the same day that the charter agreement was entered into by the parties, a guaranty agreement was also executed. The guaranty was given by Richard Stair, individually, and Pacific, Inc., an Alaska corporation as guarantors for and on behalf of Totem and provided in pertinent part:

> Guarantors hereby guarantee to NORTH AMERICAN TOWING, INC., that they will indemnify and secure NORTH AMERICAN TOWING, INC., *in the event of a breach or failure to perform by TOTEM of the term of the attached time charter agreement.*
> Additionally, guarantors hereby guarantee to NORTH AMERICAN TOWING, INC., the sum of $1,840.00 per day plus fuel to be paid to offset the cost of transporting the vessel from the location at the termination of the charter to the delivery port in Galliano, Louisiana. Said amount is not to exceed $45,000.00.

During the period of the charter the M/V KIRT CHOUEST was to tow a loaded material barge, the Marine Flasher, from Houston through the Panama Canal and into the Pacific, first to Los Angeles and then up the coast to Seattle, the final destination being Anchorage, Alaska. On October 19, 1975, Mr. Stair, the principal officer of Pacific, Inc. and Totem notified North American that the charter was terminated as of that date, it being the position of Totem that North American had failed to perform in conformity with the charter

agreement. North American did not concur in this conclusion and subsequently requested arbitration of the dispute. North American's demand for arbitration, dated December 16, 1975, was directed to Totem and also to the guarantors Richard Stair and Pacific, Inc. The nature of the dispute listed thereon was stated to be "breach of contract" and the amount claimed, $74,-713.63 (subsequently amended to a total of $87,047.82). Upon being advised of the demand for arbitration, counsel representing Totem and the guarantors, by letter of December 31, 1975, requested a clarification of the claim of North American. In response to the direction of the Arbitration Board that the claim be clarified, counsel for North American by letter of February 4, 1976, submitted an itemized statement of claim, item number one of such statement being "Specified contract amount for returning vessel _ _ _ _ $45,000.00". The other fourteen enumerated items included fuel and lube oil for the vessel's return trip, agents fees, and miscellaneous invoices from various dates throughout the charter period.

Totem responded to the claims of North American by asserting a counterclaim in the amount of $29,016.15; by claiming that the KIRT CHOUEST was not fit for the purposes of the charter party; and by taking the position that redelivery had been mutually agreed upon by the parties in Anchorage where the vessel performed work subsequent to the termination of the charter. Additionally respondents Stair and Pacific, Inc., the guarantors, filed a motion to dismiss for lack of jurisdiction for the reason that the guaranty agreement was not encompassed by the arbitration provision of the charter party.

North American took the position that the vessel adequately performed under the charter agreement, that there was no mutual termination or agreement for redelivery in Anchorage, and that the fact that the vessel performed some jobs subsequent to termination resulted from the desire of the vessel owner to mitigate damages. North American further urged that the guaranty

agreement was part and parcel of the charter agreement and annexed to it and therefore arbitrable under the charter party's arbitration clause.

Each party named its arbitrator in accordance with their agreement and a neutral arbitrator was named by the American Arbitration Association. The panel conducted hearings in New Orleans, Louisiana, on May 4, 5 and 6, 1976. Position papers were submitted by the parties and oral argument was held on June 7, 1976. The hearings were not transcribed with the parties consent in the interest of reducing costs.

A majority of the arbitrators, composed of the neutral arbitrator and the arbitrator appointed by North American held in a lengthy opinion that Totem breached the charter agreement and failed to perform the term of the time charter. They found that "North American erroneously asked only for its return expenses (plus some miscellaneous accounting items) in damages. The proper measure of North American's damages was the balance of the charter hire due, less the earnings of the vessel during that period", plus miscellaneous other expenses claimed set off by the amount of the counterclaim found due and owing by North American to Totem. The majority decision resulted in a net award of $74,568.08 to North American.

The arbitrator appointed by Totem did not concur in the majority result, except as hereinafter noted. He filed a minority opinion finding that the charter was canceled by Totem for cause and that there was redelivery of the vessel in Anchorage. The minority arbitrator took the position that the majority had impermissibly expanded the scope of the arbitration by means of an award to North American based upon charter hire, the question of redelivery being the sole question at issue.

All the arbitrators were unanimous in their decision that the guaranty agreement was not subject to arbitration and that respondents Stair and Pacific, Inc. should therefore be dismissed.

## DID THE MAJORITY ARBITRATORS EXCEED THE SCOPE OF THE MATTER SUBMITTED IN THEIR AWARD OF DAMAGES TO NORTH AMERICAN BASED UPON CHARTER HIRE

It is clear from the demand for arbitration submitted by North American that the subject of the arbitration was to be "breach of contract" and it is equally clear, both from the named respondents and from the itemization of damages filed, that it was contemplated by North American that the guaranty agreement formed part of the "contract" which was to be arbitrated. North American named Mr. Stair and Pacific, Inc. as respondents along with Totem and itemized their claim upon request from respondents to include the "contract amount" for returning the vessel, which amount was the maximum amount provided by the guaranty agreement.

Thereafter, on the first day of hearing, respondents Stair and Pacific, Inc. moved to dismiss. The propriety of such dismissal was clearly an issue which was contested by the parties and was brought before the arbitrators as the result of the motion to dismiss. The arbitrators found that the dismissal was proper as the guaranty agreement did not subject the guarantors to arbitration as it was not part of the charter party itself, (the majority noting that the guaranty agreement was "artfully drawn" to achieve this result).

In any event, having made the decision that the guaranty agreement was not part of the arbitrable contract, it fell the duty of the arbitrators to arbitrate the "breach of contract" submitted in light of the contract actually subject to arbitration.

The time charter entered into by the parties makes no provision for the specific item of redelivery expense, such provisions being confined to the guaranty agreement.

At paragraph VII of the charter agreement, it is provided:

"*Charter Hire.* For the use of the Vessel, Charterer agrees to pay Owner charter hire at the rate of $1,840.00 per day while

operating South of the Port of Seattle, Washington or $2,040.00 per day while operating North of said Port, commencing on the day of delivery. Owner shall invoice Charterer the 5th day of each month . . . for 30 days hire in advance to apply to the period of one month commencing with the 20th day of the month following such invoice . . ."

According to the decision of the majority arbitrators, damages for breach of the charter were to be computed in the following manner:

The proper measure of North American's damages was the balance of charter hire due under the charter less the earnings of the vessel during that period. The charter would have expired on December 19, 1975. The return voyage to Galliano required 35 days, light boat. The KIRT CHOUEST would have been paid the lower charter rate during those 35 days returning to Galliano. During the balance of the period she would have been working in Anchorage at the higher rate called for in the charter.

There is apparently no dispute that, in the event that the issue of charter hire was before the arbitrators for decision that this would be a proper method of computing such loss. It is noted that counsel for Totem and the guarantors recognized such method of computation in a memorandum filed in the arbitration proceedings.[1]

The question, therefore, before this Court is whether or not the majority arbitrators exceeded their authority and awarded on a matter not submitted to them thereby requiring vacation or modification of the award in accordance with 9 U.S.C. §§ 10(d) and 11(b). The answer in the instant case is that they did not.

The charter agreement in question (consisting of only the charter party itself and not the guaranty as found by the arbitrators) provides that "any controversies and claims" under the charter shall be submitted for arbitration. North American demanded arbitration pursuant to the contract.

The issue of breach of contract was therefore before the arbitrators. Respondents raised the question of the scope of the contract subject to arbitration and prevailed on this issue thereby rendering North American's itemized claim relating to redelivery under the guarantee an impossible and therefore improper measure of damage. However, the holding that the guarantee was not arbitrable did not serve to withdraw North American's original demand for arbitration under the contract of charter or to waive a claim for damages for breach. Therefore, having found that termination by Totem was not proper, the arbitrators were restricted to the charter party itself to calculate any recovery by North American. It is this Court's opinion that they carefully went forward with doing so utilizing a method that even counsel for respondents recognized as proper. Having themselves raised the issue of the impropriety of the damages claimed by North American, Totem cannot claim to be prejudiced from the natural result of its action.

## DID THE ARBITRATORS BASE THEIR AWARD ON EVIDENCE OBTAINED OUTSIDE THE HEARING

Totem further contends that the decision of the majority arbitrators should be set aside for the reason that these arbitrators relied on information gained outside the hearing in their computation of damages. Specifically it is alleged that there was no evidence presented at the hearing

1. At page 10 of counsel's "Points and Authorities in Support of Respondents Pacific, Inc. and Richard Stair, Motion to Dismiss for Lack of Jurisdiction, it is stated, "Plaintiffs cannot bootstrap the guarantors into arbitration by making a reference in the arbitration to the amount of the guarantee. In fact, this is exactly what was attempted. Redelivery should be $2,040.00 per day while transiting north of Seattle, plus fuel and lube and any other pilot and canal fees. A simple calculation will reveal that even at the conservation figures discussed at the hearing, it greatly exceeds $45,000 . . . In actuality, should the arbitrators find contrary to the evidence and respondent's position that the vessel was mutually redelivered at Anchorage, the exposure of Totem would be as hereinabove calculated."

tending to show the earnings of the KIRT CHOUEST from the date of termination to the date of the expiration of the charter agreement (October 19-December 19, 1975) while the vessel remained in Alaska. It is contended that the figure forming that portion of the judgment was obtained by means of a phone call to counsel for North American by the arbitrator appointed by North American during the course of the deliberations of the arbitrators following the close of the hearings.

At the evidentiary hearing held in the instant case, each of the arbitrators testified as to the details of this incident, and a stipulation was entered into the record concerning the content of the testimony of counsel for Totem if counsel were called to testify.

After hearing all the testimony directed to this point, and the aforementioned stipulation, it is the opinion of the Court that there is no question that the issue of the earnings of the KIRT CHOUEST during the period in question was subject of testimony at the hearing, particularly that of Gary Chouest, President of North American. In connection with his testimony on this point, the logs of the vessel or other records were requested to be produced and were brought to New Orleans to the hearing, where, in the opinion of this Court, they were available for examination by the arbitrators and by counsel. However, the document or documents were not formally introduced into evidence.

During the deliberations of the arbitrators it was discovered that each one had a somewhat different figure representing the earnings of the KIRT CHOUEST during the period in question, a fact which of itself serves to support the conclusion that the testimony and/or the evidence at the hearing did in fact reach the issue of earnings. In light of the disparity in the figures, it was agreed among the arbitrators that a phone call would be made by the arbitrator appointed by North American to his client or his client's counsel to confirm the correct figure. This was done, and the figure so obtained ($73,349.88) was utilized in both

the majority and the minority opinion to represent the earnings of the vessel from October 19 to December 19, 1975.

Arbitration proceedings are by their very nature more informal than litigation in a court of law. *American Almond Products Co. v. Consolidated Pecan Sales Co., supra*; *Application of States Marine Corp. of Delaware, supra*. An arbitrator need not conform strictly to all the "niceties" of the federal rules, however, the parties must be granted a fundamentally fair hearing. *Bell Aerospace Co., Div. of Textron v. Local 516, International Union, et al., supra*.

In the instant case, unquestionably the issue of the earnings of the vessel was the subject of testimony supported by documentary proof, although the documentary proof was not actually introduced into evidence. All parties directed argument in the memoranda filed to the issue of earnings of the vessel subsequent to termination and the inferences to be drawn therefrom. Clearly it was the position of Totem that there being a mutual termination in Anchorage, there was no further claim of any kind by North American. However, the arbitrators found to the contrary and proceeded to assess damages. Any disagreement that Totem may have with the outcome of the arbitration cannot serve as a basis for vacating it. The parties agreed to arbitration of disputes arising under the charter and so doing they are bound by the results unless the arbitrators have violated 9 U.S.C. § 10. In the instant case, it is the Court's opinion that they did not. The issue of earnings of the vessel and the evidence of it was presented at hearing and Totem had ample opportunity to address it at that time. The telephone call made during the deliberations was not, as Totem contends, the taking of evidence outside the hearing, but the attempt to confirm figures brought out at the untranscribed hearing. It is the opinion of the Court that these parties were accorded a fair and impartial hearing the results of which should not be upset by this Court.

Arbitration may or may not be a desirable substitute for trials in courts; as to that the parties must decide in each in-

stance. But when they have adopted it, they must be content with its informalities; they may not hedge it about with those procedural limitations which it is precisely its purpose to avoid. *American Almond Producers v. Consolidated Pecan Sales Co., supra.*

For the foregoing reasons, the motion of Totem Marine Tug & Barge, Inc. to vacate or modify the arbitration award should be denied and the application of North American Towing, Inc. for confirmation of the arbitrator's award should be granted.

Let judgment issue in accordance with this opinion.