PAUL ALLISON, INC., Plaintiff,

v.

MINIKIN STORAGE OF OMAHA, INC., Defendant and Third-Party Plaintiff,

v.

The TRAVELERS INDEMNITY COMPA-NY, Third-Party Defendant.

Civ. No. 77–0–204.

United States District Court.
D. Nebraska.

March 21, 1979.

Theodore J. Stouffer, Omaha, Neb., for plaintiff.

Sheldon J. Harris, Omaha, Neb., for defendant and third-party plaintiff.

Theodore J. Stouffer, Omaha, Neb., for third-party defendant.

## MEMORANDUM

DENNEY, District Judge.

Paul Allison, Inc. [Allison] and the Minikin Storage Corporation [Minikin] entered into a construction contract calling for the erection of warehouse facilities in Nebraska. A dispute arose, and the matter was submitted to arbitration in accordance with the contract. On September 16, 1975, an

award of $20,607.30 was entered for the plaintiff, in the State of Nebraska, a location not specifically designated as an arbitration site in the contract. Minikin subsequently refused to pay the award, and Allison filed a petition in an Oklahoma state court to collect damages arising from the defendant's alleged breach of contract. The petition, which was filed on January 8, 1976, made no reference to the arbitration proceedings.

Thereafter, Minikin, a Nebraska corporation, filed a petition for removal to the federal district court in Oklahoma. Subsequent to removal, the Travelers Indemnity Company, a third-party defendant, raised the arbitration proceeding in its answer. Allison thereupon amended its complaint and stated that it would withdraw its claim for contractual damages if the arbitration award was adjudged binding on the parties.

On June 30, 1977, after argument on the law and facts, a federal district judge in Oklahoma granted the defendant's motion for a change of venue. *Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.*, 436 F.Supp. 444 (W.D.Okl.1977).

Subsequently, the defendant filed a motion to dismiss for lack of subject matter jurisdiction, contending that since the Oklahoma court had no jurisdiction over the subject matter, it had no power to transfer this case pursuant to 28 U.S.C. § 1404(a) (1976). On June 28, 1978, this Court entered its memorandum and order holding that the federal district court in Oklahoma had subject matter jurisdiction over this case, and, therefore, was empowered to transfer the matter to this Court. *Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.*, 452 F.Supp. 573 (D.Neb.1978).

On August 11, 1978, the United States Magistrate ordered that the issue as to the validity of the arbitration proceedings as presented by plaintiff's amended complaint be bifurcated for separate trial to this Court. In accordance with that order, this Court, on February 27, 1979, held a nonjury trial on the issue of the validity of the arbitration award.

*Discussion*

At the outset, the Court is faced with the question of determining which law to apply: state or federal. The defendant argues that since the contract is governed by the laws of the State of Nebraska and since the arbitration proceedings were conducted in accordance with Nebraska law, the arbitration provision is also governed by Nebraska law.

Under Nebraska law, various procedures are set up for conducting an arbitration proceeding and for enforcing an arbitration award. Neb.Rev.Stat. §§ 25–2103 to 2120 (Reissue 1975). As the arbitration proceedings did not comply with these procedures, the defendant contends that the award is invalid and unenforceable.

While the parties have stipulated to the effect that the arbitration proceedings did not comply with the applicable Nebraska statute, the plaintiff contends that since the Federal Arbitration Act [the Act], 9 U.S.C. §§ 2–14 (1970) is the law applicable to the arbitration provisions of the contract, it was unnecessary to meet the procedural requirements of the Nebraska law.

The defendant, in support of its position, stresses the importance of two articles contained in the contract. Article 7.1.1 provides that "[t]he contract shall be governed by the law of the place where the project is located." The project was located in Omaha, Nebraska. Article 7.10.1, the relevant provision on arbitration, provides:

All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

■ The Federal Arbitration Act was enacted in 1925. "[R]eversing centuries of judicial hostility to arbitration agreements, [the Act] was designed to allow parties to avoid 'the costliness and delays of litigation' and to place arbitration agreements 'upon the same footing as other contracts . . .'" *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510–11, 94 S.Ct. 2449, 2452, 41 L.Ed.2d 270 (1974). Accordingly, federal courts generally resolve any doubts in favor of arbitration, *Metro Indus. Painting Corp. v. Terminal Construction Co.*, 287 F.2d 382, 385 (2d Cir. 1961), and are hesitant in upsetting arbitration awards. *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 429 F.Supp. 452, 453 (E.D.La.1977).

■ Section 2 of the Act, the key provision in this action, provides that:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, of an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

"Commerce", as employed in § 2, is defined in § 1 of the Act to mean in part "commerce among the several states." Thus, the Act is limited in its application to maritime transactions and transactions involving interstate commerce.

■ It is clear from the record that the contract here is definitely one "evidencing a transaction involving commerce" and thus falls within the scope of the Federal Act. "Once a dispute is covered by the Act, federal law applies to all questions of interpretation, construction, validity, revocability, and enforceability." *Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209, 1211 (2d Cir.), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972).

Moreover, despite the existence of a "choice of law" clause in the contract, the law is clear that it is federal law which governs questions regarding the validity and enforceability of the arbitration agreement. *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1268–70 (7th Cir. 1976); *Collins Radio Co. v. Ex-Cell-O Corp.*, 467 F.2d 995, 997 (8th Cir. 1972); *American Airlines, Inc. v. Louisville & Jefferson County Air Board*, 269 F.2d 811, 815 (6th Cir. 1959).

Parties are not free to burden the arbitration process under the Federal Act by adopting state law which shifts the determination of disputes from arbitrators to courts. To allow parties to so contract would undermine the provisions of the Federal Act. Congress, in enacting the Federal Arbitration Act, exercised its power over admiralty and interstate commerce. Any arbitration contract involving one of those areas is governed by the Federal Act. To permit the parties to contract away the application of the Act by adopting state law to govern their agreement would be inconsistent with the Act. . . .

*Commonwealth Edison Co. v. Gulf Oil Corp., supra*, 541 F.2d at 1269.

The defendant, through the choice of law provision, would have federal law yield to the provisions of the Nebraska statute. This choice of law clause refers the Court to a consideration of state law with respect to questions involving "the making of the entire contract rather than just the arbitration clause. . . . Questions of the validity of an arbitration agreement, however, are governed by the Federal Act . . ."[1]

1. The defendant has assumed that the choice of law clause contained in Article 7.1.1 determines the law applicable to the arbitration agreement contained in Article 7.10.1. In *Galt v. Libbey-Owens-Ford Glass Co.*, 376 F.2d 711, 713 (7th Cir. 1967), the Court considered an identical article and stated: "It is noteworthy that the contract does not refer to any specific arbitration statute. However, section 2 of the Federal Arbitration Act. (9 U.S.C. § 1 *et seq.*) is sufficiently broad to apply . . . ." The contention that Nebraska law is applicable and that

*Commonwealth Edison Co. v. Gulf Oil Corp., supra,* 541 F.2d at 1270; *see also American Airlines, Inc. v̊. Louisville & Jefferson County Air Board, supra,* 269 F.2d at 815–17. "Within the scope of the statute circumscribed by the Constitution, Federal law is of course paramount under the Supremacy Clause, and State law must give way." *American Airlines, Inc. v. Louisville & Jefferson County Air Board, supra,* 269 F.2d at 815; *see also Warren Bros. Co. v. Community Bldg. Co. of Atlanta,* 386 F.Supp. 656, 669 (M.D.N.C.1974).

Therefore, the Court finds that federal law, not state law, governs the validity and enforceability of the arbitration agreement. Under the federal act, the arbitrators are not required to abide by the procedural requirements contained in the Nebraska statute in order to validate the award. It is the obvious policy of the Federal Arbitration Act to promote arbitration so that the congestion of the courts is eased, *Galt v. Libbey-Owens-Ford Glass Co., supra,* 376 F.2d at 714, and because of this the Court will not impose the restrictive procedural requirements of the Nebraska law suggested by the defendant in its interpretation of the arbitration agreement; to do so defeats the basic purposes of arbitration. "Under federal law, arbitration clauses are liberally construed." *Galt v. Libbey-Owens-Ford Glass Co., supra,* 376 F.2d at 715.

Next, the defendant contends that the plaintiff waived or abandoned the arbitration award by filing the original state court action rather than attempting to confirm the arbitration award.

The Court notes that in each of the cases cited by the defendant in support of its position, the party or parties waived their arbitration rights by filing suit prior to the arbitration proceedings. On the other hand, in the instant case, the plaintiff filed its state court action only after the arbitration proceedings were over and the award was entered. Based on the record in this case, the Court is not persuaded by the

defendant's attempt to analogize these two distinct situations.

■ In light of the overriding federal policy favoring arbitration, a waiver is not to be lightly inferred. *Hart v. Orion Ins. Co.,* 453 F.2d 1358, 1360 (10th Cir. 1971); *Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co.,* 425 F.Supp. 1088, 1092 (N.D.Cal. 1976), aff'd, 572 F.2d 1328 (9th Cir. 1978). "The test of waiver is not inconsistency, but whether the objecting party has been subjected to prejudice." *Michael v. SS Thanasis,* 311 F.Supp. 170, 181 (N.D.Cal.1970).

■ From the outset, the plaintiff agreed to arbitrate as did the defendant. Both sides vigorously argued their views to the Arbitration Committee. An award was subsequently entered in the plaintiff's favor. It was only after the defendant refused to honor the award by the arbitrators, to whom the parties validly agreed to submit their disputes, that the plaintiff filed suit in state court. While it may have been improper for the plaintiff to file suit without referring at the outset to the arbitration award, the Court does not believe that plaintiff's subsequent amendment to the complaint referring to the arbitration award in any way prejudiced the defendant or evidenced plaintiff's intent to waive the right to the award. At all times, the defendant was aware of the existence of the award and its liability under it.

Defendant, in support of its position, merely contends that the filing of the plaintiff's petition and the subsequent filing of its answer evidenced plaintiff's intention to abandon the award. Nowhere does the defendant show how it was prejudiced by the plaintiff's actions in this matter. The plaintiff's delay in referring to the award and the filing of responsive pleadings prior to the reference does not, without resulting prejudice to the defendant, justify a finding of waiver. *Carolina Throwing Co. v. S & E Novelty Corp.,* 442 F.2d 329, 330–31 (4th Cir. 1971).

the arbitrators acted in accordance with the law of that state is not supported by the record. *See also* the discussion in *Commonwealth Edi-*

son Co. v. Gulf Oil Corp., supra, 541 F.2d at 1270–71.

As the Court noted earlier, it is well settled that a court should be hesitant in upsetting an arbitration award and that the award should stand "unless it is abundantly clear that it was obtained through corrupt, fraudulent or undue means . . ." *General Construction Co. v. Hering Realty Co.*, 201 F.Supp. 487, 491 (E.D.S.C.1962); *see also Saxis Steam Ship Co. v. Multifacs Internat'l Traders, Inc.*, 375 F.2d 577, 582 (2d Cir. 1967). In other words, the Court's function in confirming or vacating the award is severely limited especially where the parties have agreed to arbitrate and have agreed that such arbitration should be final. *See Totem Marine & Barge, Inc. v. North American Towing, Inc., supra*, 429 F.Supp. at 453. Any other approach would frustrate the purpose of arbitration as an effective dispute resolution mechanism.

The statutory grounds for vacating an award are contained in § 10 of the Act.[2] These grounds represent extreme situations and the record clearly shows that the arbitrators did not take any actions which could be considered within the scope of that section. The Court does not believe that the failure of the arbitrators to follow the Nebraska Procedural Rules was unduly prejudicial to the defendant. Nor does the Court believe that the arbitrators failed to comply with the thirty-day period for rendering the award contained in § 40 of the Construction Industry Arbitration Rules.[3]

2. *Section 10 provides as follows:*
In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
(a) Where the award was procured by corruption, fraud, or undue means.
(b) Where there was evident partiality or corruption in the arbitrators, or either of them.
(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that

In sum, the Court finds that the arbitration award was valid and binding on the parties and is entitled to confirmation and enforcement by this Court.

The Court also finds that the arbitrators took into consideration all claims and counterclaims submitted by the parties and the award reached was to that effect [Exhibit # 4].

An order shall issue contemporaneously with this Memorandum Opinion.

a mutual, final, and definite award upon the subject matter was not made.
(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

3. Section 40 of the Rules provides as follows:
Section 40. TIME OF AWARD—The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties, or specified by law, not later than thirty (30) days from the date of closing the hearings . . . [*See* Exhibit # 3].
The arbitration hearings were declared closed on September 5, 1975 [Exhibit # 6]. The award was rendered on September 16, 1975 [Exhibit # 4].